## RUFUS BOBBITT *vs.* THE LIVERPOOL AND LONDON AND GLOBE IN- SURANCE COMPANY.

1. The application for a policy of insurance, forms a part of the contract of in- surance where the policy refers to it as such.

2. And in an action by the insured on such a policy, the burden of proof is upon the plaintiff.

3. The application must be set out in the complaint, and, being in the nature of a condition precedent, the truth of its representations must be proved by him.

4. A representation as to the value of property insured, is material, even though the policy contains a stipulation to pay two-thirds of the real value or less if the loss were not so much; but the doctrine of immeteriality does not apply in such a case, the representation forming a part of the contract, and, being made in response to a direct question.

5. A charge in such a case, that the application was not a part of the contract, that the declaration as to value by the insured was a *mere representation*, and that the only question for the consideration of the jury was the value of the property burnt, is erroneous, and the error is not cured by the remark after- wards made to the jury that unless such statements were fraudulent and false, they would not bar the plaintiff's right to recover.

6. Even treating the statement as to the value as a representation; it is not a correct principle, that to prevent a recovery, it is necessary to show that the statement was *fraudulent* as well as false, and herein lies tne difference between a representation as *an opinion* and a representation of *a fact.*

7. It is sufficient to avoid the policy that the representations were false *however honestly made*—if material they must be *perfectly true.*

8. One whose property is insured at his own request in the name of another, being his agent, has an insurable interest.

This was a civil action, tried before His Honor, Judge Watts, at July Special Term 1871, of Granville Superior Court.

The action was brought upon a policy of insurance issued by the defendant at the instance of plaintiff, to and in the name of one Newnan, against the loss of certain tobacco, &c. by fire.

The policy was based upon the application. The application is in the usual form, and contains a series of questions propounded to Newnan, and his answers thereto, amongst others, the following:

Q. What is the present cash value of the property on which insurance is wanted?

A. The present cash value of the tobacco on hand is $30,000 and it will be increased to $50,000. The average value on hand, say $30,000.

There were printed on the back of the policy, not signed, a number of statements under the heading, "the conditions and stipulations referred to in this policy," amongst which is this:

"1. The basis of this contract is the application of the insured, and if such application does not truly describe the property, this policy shall be null and void."

The policy reads thus:

"This policy of insurance witnesseth, that Dennis P. Newnan having paid to the London and Liverpool and Globe Insurance Company, the sum of five hundred dollars, for insurance for loss or damage by fire, (subject to the conditions and stipulations endorsed hereon, which constitute the basis of this insurance,)

\*     \*     \*     \*     \*     \*     \*

do hereby agree that from ——— until ——— the funds and property of said company shall (subject to the conditions and stipulations endorsed hereon, which constitute the basis of this insurance) be subject and liable to pay, reinstate or make good to the said assured, their heirs, executors or administrators such loss or damage as shall be occasioned by fire to the property above mentioned, and hereby insured, not exceeding in

each case respectively the sum or sums hereinbefore severally specified," &c., &c.

The answer alleged that the representations of Newnan were in several respects false and fraudulent, and insisted that Newnan, who was plaintiff's bailee, had no insurable interest. On the trial it appeared that the policy was obtained in the name of Newnan, but for plaintiff's benefit though plaintiff's name does not appear in the policy and that Newnan had assigned this policy to plaintiff. There was also evidence tending to show that the representations contained in the application as to the value of the tobacco were false and also fraudulent. The defendant insisted that the application and the endorsed memoranda, headed "creditors &c.," formed a part of the contract of insurance and warranty and if false the plaintiff could not recover, and applying that principle to the evidence, that if the jury believed from the evidence that the cash value of the tobacco in the plaintiff's factory at the time of making the application was greatly less than thirty thousand dollars, the plaintiff would not be entitled to recover.

His Honor declined these instructions and charged the jury : " That if they believed from the evidence that the plaintiff had *twenty**\** thousand dollars worth of tobacco in the factory at the time of the fire, and he sustained loss to that amount by reason of the fire, that he is entitled to recover twenty thousand dollars.

That the application was a representation and forms no part of the contract.

That the application was not embodied in the policy and is no part of the same.

That the only question for the jury to consider is the amount of the tobacco in the factory at the time of the burning.

*That Newnan did have an insurable interest.*

---

*Note.—Perhaps a misprison for " thirty ?"

That the statements in the application were merely representations, and unless they were fraudulent and false they would bar the plaintiff's right of recovery."

Many other interesting questions are presented by the voluminous transcript, but as the decision is based upon the two points developed by this report, it is deemed best not to anticipate, as from all appearances our case will again appear in this Court in a new garb.

There was a verdict and judgment for the plaintiff for $20,000, and the defendant appealed.

*Lanier* for the appellant.

1. The defendant was entitled to the instruction prayed, to the effect that the application was a part of the contract.

*Parson's Laws of business,* 364, 402, 410, 411, 412.

*Am. Com. Law,* 359, 360, 361, 362.

As to the difference between mere statements and representations forming part of the contract see *Parson's L. B.* 410, 411.

2. The Court ought to have given the other instructions, because, the affirmative statement of the owner, in the application, as to the cash value of the stock of tobacco is a warranty, and operates as a condition precedent.

*Parson's L. B.,* 372, 402, 410, 411, 412.

*Parson's Merc. Law,* 499, note 1.

3 *Kent,* 282, 283, 288.

*Whitehurst* v. *N. C. M. Co.,* 7 *Jones,* 433.

*Boyle* v. *Ins. Co., ib.* 373, (note by the terms of the policy any misrepresentation or concealment avoids the policy.) If a warranty, then being broken, though innocently, it avoids the policy whether material or not.

*Parson's L. B.,* 410, 412.

3 *Kent,* 382, 383, 388.

*Parson's Mer. Law,* 519 to 521 inclusive.

*Am. Com. Law*, 364, 365, 366.

*Hazzard* v. *N. E. Ins. Co.*, 8 *Peters*, 579.

*Marshall on Insurance*, 341, 451.

*Rich* v. *Parker*, 7 T. R., 705.

*Ellis on Insurance*, 81, 82.

If not a warranty strictly at all events, it was a part of the contract, and if material *in the mind of the underwriter* and false, it avoids the policy.

3 *Kent*, 283.

*Parsons L. B.*, 411, 412.

That it is part of the contract, appears from the fact, that the application is referred to, in the policy as the basis of it, and is signed by the party, and that the terms of the policy make a misrepresentation avoid it.

That it was material in the mind of the underwriter, is shown by the question being asked in the application.

*Parson's L. B.*, 476, 413.

*Am. Com. Law*, 364.

*Parson's Mer. Law*, 534.

3. The Court erred in every instruction that was given, not only because they were contrary to law, but also because they substantially expressed to the jury an opinion as to the facts, namely, that the plaintiff had established by proof everything necessary to entitle him to recover something, and the only thing left for the jury to determine, was the measure of damages!

As to the last instruction, even if it were law, it was wrong, because in the other instructions, the Court had already intimated an opinion in substance, that the statements in the application were not fraudulent and false, or not material if they were; and because from the whole charge, the jury must have understood the Court to mean, that they must have been fraudulent in intention to bar a recovery.

*Phillips & Merrimon* for the appellee:

I. "Application" contains *representations*, and not *warranties*. *Campbell* v. *Ins. Co.*, 98 *Mars.*, 381 : "*basis.*"

II. Burden of proving them false, devolves upon defendants.

III. All matters showing contract void for fraud, must be specially pleaded. *Price* v. *Ins. Co.*, 19 *La. An.*, 214.

IV. Pleading must show that a representation relied on as false, was also *material*; *i. e.*, materiality is matter of fact for jury. *Ins. Co.* v. *Southard*, 8 *B.*, *Mon.*, 634.

V. Presumption always that a statement is a *representation*, and not a *warranty*. *Ibid. Fland.*, 223, and *Wall* v. *Howard Ins. Co.* 14 *Bard.* 383.

VI. By the first condition, which is part of the *contract*, the description of the property must be *true*. It is described as in the factory. There was evidence that the agent of the defendant, knew that the greater part was in a *barn*, and was to be removed into the factory shortly afterwards. In such case the misdiscription does not hurt. *Steph. N. P.*, *3d*, 2082. *Franklin* v. *Ins. Co.*, 42 *Mo.*, 456. *Anson* v. *do.*, 23 *Iowa*, 84. *Lee* v. *Addit*, 37 *N. Y.*, 78, *Combs* v. *do.*, 43 *do*, 148, *Bartholomew* v. *do.*, 25 *Iowa*, 507, *Rowley* v. *Ins. Co.*, 36 *N. Y.*, 450. *Ayers* v. *do.*, 21 *Iowa*, 185. *Flanders* 180, &c., and 100. See *Plumb* v. *Ins. Co.*, 18 *N. Y.*, 392, and see *Tibbetts* v. *Ins. Co.*, 3 *Allen*, 559.

VII. That plaintiff had no insurable interest must be alleged in answer to make defence admissible. *Forbes* v. *Ins. Co.*, 19 *Gray*, 249.

*W. A. Graham, Moore & Gatling, L. C. Edwards* followed on the same side :

Reade, J. The plaintiff made a written application to the defendant to insure his property, in which application he undertook to describe the property, its character, quantity, value and situation. In consequence of that application and the

payment of $500, the defendant agreed to insure the property for twelve months against fire, or to pay $20,000 if the property should be burned if the loss should be so much, or else as much as the loss should be, and gave the plaintiff a policy to that effect.

The application was a printed form furnished by the defendant with questions to be answered, and with blanks for the answers, and the blanks were filled up in writing by the plaintiff and signed by him.   There was a printed heading to the application, setting forth that, "the estimated value of personal property, and of each building to be insured, and the sum to be insured on each must be stated separately.   When personal property is situated in two or more buildings, the value and amount to be insured in each must be stated separately, three-fourths only of the value to be insured, &c."

The application described the property insured as, "raw and manufactured tobacco in a two-story framed building, &c." And in answer to question 8, of the form, "what is the present cash value of the property on which insurance is wanted?" the response is, "the present cash value of the tobacco on hand is $30,000, and it will be increased to $50,000, the average value on hand say $30,000." And the application concludes in print as follows: "And the said applicant hereby covenants and agrees to, and with said company that the foregoing is a just, full and true exposition of all the circumstances with regard to the condition, situation, value and risk of the property to be insured, so far as the same are known to the applicant and are material to the risk."

Upon that application the defendant issued to the plaintiff a $20,000 policy, in which it is expressed to be "subject to the conditions and stipulations endorsed on the back of the policy, which constitute the basis of this insurance."

One of the aforesaid conditions and stipulations on the back of the policy is as follows:

"1. That the basis of this contract is the application of the

insured, and if such application does not truly describe the property, this policy shall be null and void."

The first question for our consideration is, what is the nature and effect of that application ? Is it a part of the contract, and in the nature of a warranty or condition precedent that the property was as described, or is it a representation preliminary to and outside of the contract?

It may be premised that insurance contracts are in general, subject to the same rules of construction as other contracts. And it is a familiar rule that where there are several separate writings all about the same matter, between the same parties, referring to each other and all necessary to complete the whole, they are all to be read together as if they were all one. Apply that rule to the case before us. The application asks for the policy, and describes the property, and covenants for the verity of the description. The policy is issued as asked for in the application, and refers to another writing on the back of the policy for the "conditions and stipulations subject to which it is issued." And that writing refers back to the application, upon the verity of which the policy is to be valid or null and void. Take away either of these writings, and the contract would be incomplete, and the rights of the parties could not be declared. Read them together, and the contract amounts to this:

The plaintiff proposed to the defendant to insure him $20,000 on property, the "present cash value of which was $30,000," and to continue on an average about that value for twelve months, and that the property was at that time and would continue to be in a certain two-story framed building which was described. And the defendant agreed that if the plaintiff would give him $500, he would make the insurance, and would pay him $20,000 in case of fire if he should lose so much, or such less sum as the loss might be : with the understanding that the property was as described, and should continue so to be, else he was to pay nothing at all.

This view of the case will be found to be abundantly supported by Parsons on Contracts, Parsons on Marine Insurance, and Archbold's Nisi Prius, title Insurance, and by the adjudged cases cited by them. It is sufficient to quote the following from Archbold:

"Modern policies of insurance usually contain a number of conditions, stipulations, warranties, &c., either in the body of the instrument or endorsed upon it. Frequently, the policy refers to certain printed proposals of the company as containing the terms of the contract; and in such cases such printed proposals must be deemed a part of the policy, even although they be without stamp, or seal, or signature."

The application being, therefore, a part of the contract, an important enquiry was, whether the property was correctly described in the application. And the first question is upon whom was the burden of proof? The burden of proof is upon the plaintiff. It would be otherwise if the application were not a part of the contract, but was a mere representation.

Being a part of the contract it was necessary for the plaintiff to set it out in his complaint; and it being in the nature of a warranty or condition precedent, it was necessary that the plaintiff should prove it. Archbold says: "Where conditions are endorsed upon the policy or contained in certain proposals referred to in the policy, they must be set out in the declaration, and there must be an averment showing that the plaintiff has observed them. And where a compliance with them is in the nature of a condition precedent to the plaintiff's right to recover, a strict compliance must be observed." And again: "If an averment of compliance with any of the conditions endorsed on the policy, or contained in any of the proposals of the company referred to in the policy, be traversed, then, if the traverse be in the negative, the plaintiff must prove the averment; but if the averment be in the negative and the traverse be in the affirmative, the defendant must prove his traverse. And if any of these be a condition precedent to

the plaintiff's right to recover, the compliance with it must be strictly averred and as strictly proved."

The complaint in this case, Art. VI, does aver that the plaintiff had "fulfilled all the conditions of the insurance," but it does not set out the conditions embraced in the application, under the idea we suppose that they were not a part of the contract. This defect may be remedied by an amendment at the discretion of the Judge below, when the case goes back if the plaintiff choose to move. The defendant's traverse is also general. But considering the complaint to contain all the necessary averments, and the defendant's traverse to be in the negative—which is the most favorable view for the plaintiff, because as we have seen it is necessary that the complaint should contain them—then the burden of proof is upon the plaintiff; and he must show that the cash value of the property at the time of the application, or at least at the time the policy issued was $30,000, and that it continued to be about that up to and at the time of the fire.

It was much insisted on in the argument here, that even if the description of the property was false, yet it was *immaterial*, and therefore did not interfere with the plaintiff's right to recover. But the doctrine of immateriality does not apply when the representation is a part of the contract, and especially when it is in reply to a direct question. "Where the representation is no part of the contract, it vitiates the policy as being a fraud merely; and therefore if it be immaterial or be substantially complied with, it will not affect the validity of the policy." But if the description of the property were not a part of the contract, but were a mere representation, still it is a great mistake to say that it is immaterial. It was said to be immaterial because the policy compels the defendant not to pay $20,000, but only so much as should be lost by the fire, and therefore the less property on hand to be burned, the less risk for the defendant and the better for him. If that were so it would be difficult to account for the provision in the

policy that the defendant would not insure for more than three-fourths the value of the property on hand. The reason for this limitation is, plainly, to make it to the interest of the plaintiff to take care of the property, and to prevent the dangerous temptation to destroy it for gain. No one can suppose that the defendant would have insured the plaintiff $20,000 if he had supposed that the property was only worth $20,000, or probably not half so much.

From what we have said, it will appear what were the errors on the trial below, without noticing the defendant's many exceptious, *seriatim.* His Honor informed the jury that the application was not a part of the contract; that it was a mere representation, and that the only enquiry for them was the value of the tobacco burned. And he very emphatically excluded everthing else from their consideration. All this was error.

It it said however, that a subsequent part of the charge cures these errors. His Honor closed his charge by saying, " The statements in the application were mere representations, and unless they were fraudulent and false, they would not bar the plaintiff's right to recover." If this were so in theory, still it would be dangerous to allow a verdict to stand where there is so much probability that the jury were misled. After he had emphatically told them that the only enquiry was, how much tobacco was burned, what did they care for " mere representations," which were " no part of the contract." But it was not right in theory. Let it be supposed that the statement of the value of the tobacco was a mere representation— a representation of a *fact*—and that representation was *false,* but not *fraudulent,* and misled the defendant in a material matter ; the plaintiff could not recover. A representation as an *opinion,* must be not only false but fraudulent ; but not so with the representation of a *fact* as distniguished from an *opinion.* The principle is very well stated by Archbold :

" As the unwriter calculates his risk by what is told to him by the insured at the time of effecting the insurance, the law

exacts from the assured, not only that he state all he knows material to the risk, but that what he states shall be perfectly true —insurance being a contract in which the utmost good faith is required to be observed on the part of the assured, and if upon effecting an insurance, any representation is made to the underwriter, which is material, and if true, would lessen the risk, if such representation turn out to be false, it will have the effect of vitiating the policy. And it matters little to him whether the party making the representation knows it at the time to be false, or does not know whether it is false or true, or believes it to be true from the representations of others," &c. So that His Honor erred in telling the jury, that the representations must be " false and fraudulent." It was sufficient to avoid the policy if they were false, however honestly made ; because it was the representation of a fact calculated to mislead, and not an expression of opinion or belief.

When the case is tried again, the application, the policy and the conditions and stipulations must all be considered as one instrument, as containing the contract. And the plaintiff must aver and prove compliance with all his part of the contract.

If the plaintiff recover, he is entitled to the value of the property burned, which was embraced in the policy, not exceeding $20,000. The value of the tobacco, was what it was worth then and there—what it would have sold for then and there, or what it would have netted the plaintiff in the usual markets, after paying stamp duty and all other usual and necessary expenses.

We do not sustain the defendant's exception, that the plaintiff had no insurable interest.

There is Error.                               *Venire de novo.*