## S. D. WYNNE *v.* LIVERPOOL and LONDON and GLOBE INSURANCE COMPANY.

The legal effect of an amendment, is, to put the case in the same plight and condition as if the matter introduced by the amendment had been inserted in the original pleading at the outset.

A clause in an application for a policy of insurance, that the party insured was to take an inventory of his stock every three months, is not a condition by which the policy was to be defeated and become of no force.

The finding of a jury that the loss of the plaintiff was $3,062 of which the sum of $462 is the *value* of the store, and $2,600 the *value* of the stock on hand, should be read, is the *damage* on account of the destruction of the store and goods.

Counsel for appellants are not justifiable in making up a case in such a way as to leave the Court in doubt as to the point intended to be made; every intendment must be made against the appellant.

CIVIL ACTION for the recovery of a loss by fire, tried by His Honor, *Judge Moore,* at Spring Term, 1874, of TYRRELL Superior Court.

Plaintiff brought this action upon a policy of insurance issued by defendant, against the loss by fire of plaintiff's store and stock of goods.

The answer admitted the execution of the policy, but alleged that the contract of insurance was subject to other terms, conditions and limitations and restrictions, than those set forth in the complaint, viz: To certain conditions and warranties that were contained in the application of the plaintiff, a copy of which was annexed to the answer.

One among the issues submitted by the plaintiff to the jury was the following to wit :

Was the said contract of insurance subject to other terms, conditions, limitations and restrictions, than those set forth in the complaint; and if so, does the written and printed paper writing attached to the answer contain them ? (The said condition, &c., are noticed and sufficiently set out in the opinion of the Chief Justice.)

The defendant introduced the application as evidence, and proved its execution by plaintiff, and moved that the plaintiff be called. Upon motion of plaintiff's counsel, the Court permitted him to amend his complaint by setting forth the application, and making it a part thereof. Immediately on amending his complaint the plaintiff submitted his case to the jury.

Before the complaint was amended, the plaintiff stated (in answer to a question of his counsel) that he had complied with all the conditions of the policy of insurance; and before he left the stand, (upon his cross-examination,) the original application for insurance was handed to him, and his signature thereto acknowledged; he also stated that he had not taken an inventory of stock after 1st January, and that he expected, when he entered business, to keep up the annual average value of his stock at $4,000, but he did not state that he had done so.

The defendant asked the Court to charge that there was no evidence that the plaintiff had complied with and performed *all* the warranties as contained in his application; and that as the averments and performance of these warranties are conditions precedent to the right of action, the plaintiff cannot recover.

His Honor, the case states, refused the instruction because there was some evidence as before stated. Defendant excepted because the evidence alluded to was as to the conditions of the policy, and before the application had been set out by plaintiff in his complaint; and inasmuch as there was no evidence offered after the amendment, as to the performance of the conditions and warranties, the plaintiff could not recover.

In the application, plaintiff represented the store to be worth in cash, $700. It was in evidence on the part of the plaintiff, that the store was built by him on leased ground, and that his lease was for two years, with the privilege of five. A witness introduced by the plaintiff stated that if he desired to go into business at the place, he would give $700 for the store. On his cross-examination, this witness stated that he was not a merchant, nor did he know the cost of building houses.

The mechanic who built the store was introduced by defendant, who stated the actual cost of building the same, everything included, was $226, and that he would replace it for that amount, or for $250 at the outside. This evidence was corroborated by two other mechanics.

Among the issues submitted to the jury were the following:

Was the cash value of the store $700, and the cash value of of the stock $3,500 at the time of the insurance?

What was the loss to the plaintiff by reason of the fire?

Defendant asked the Court to charge that under the contract the company had the right to rebuild, and that therefore the cash value of the store, within the legal intendment of the contract of insurance was, what it was worth to rebuild it; and that in estimating the value of the store the jury could not take into consideration the location and favorable circumstances for trade, for that is outside of the cash value, as the fire can not destroy location, &c.; and that if the jury believe the mechanics who say that the store can be replaced for $250, the plaintiff cannot recover.

His Honor refused so to charge, but instructed the jury that in estimating the cash value of the store, then and there, the location and favorable circumstances for trade, should not be considered, but find what it would have brought in cash. Defendant excepted.

The Court was further asked by defendant to charge that from the application it appeared that an inventory was to be taken every three months by the plaintiff; that it was taken on the 1st January, 1872, and that the fire occurred more than three months from that time, to wit: on the 4th April, 1872; and inasmuch as plaintiff swore that he made no other inventory than the one in January, he did not comply with the conditions set forth in the application, and could not recover. Instructions refused by His Honor, and defendant again excepted.

To the first issue, the jury found the value of the store to be as stated in the application: And to the second that the loss was $3,062.33, of which $462.35 was the value of the store

and $2,600 the value of the stock. Judgment in accordance with the verdict, from which the defendant appealed.

It is also stated in the case sent up that the jury "responded affirmatively to the following issues in addition to those heretofore set forth, to-wit: Has the plaintiff complied with and performed all the conditions, warranties and limitations and restrictions embraced in the contract of insurance." The jury also found that the inventory was not taken as required in the policy. Other issues were submitted, but were omitted in the statement of the case, as there were no exceptions taken to the finding of the jury thereon.

*A. M. Moore* and *Empie,* for appellant.
*Jno. A. Moore,* contra.

PEARSON, C. J.   1. The point made on the fact that after the amendment was allowed, no further evidence was offered and the case was immediately put to the jury, has nothing to rest upon ; for it is a settled principle that the legal effect of an amendment is to put the case in the same plight and condition, as if the matter introduced by the amendment had been inserted in the original proceeding at the outset. So here it is the same in legal effect, as if "the application" had been set out in "the complaint" when it was originally filed. Now this familiar principle follows the rule in equity procedure "no matter can be allowed to be introduced by way of amendment, unless it existed at the time the original bill was filed." If it occurred since it can only be brought to the notice of the Court, and become a part of the proceedings by means of a supplemental bill.

2. The seeming discrepancy in the finding of the jury upon the several issues, is explained by adverting to the fact that the defendants did not insure the full value of the building or goods, consequently the finding "of which the sum of $462 is the value of the store," should be read " *is the damage on account of the destruction of the store,*" and "$2,600 the value of the

stock on hand" should be read, "is the *damage* on account of the destruction of the goods." This is clear after the rubbish is cleared off. But it is really provoking that gentlemen of the bar, under the privilege accorded to them by C. C. P., pay so little attention to the "making up" of cases for the Supreme Court, and throw upon the Justices so much unnecessary labor. The counsel for the appellant is not justifiable in making up a case in such a way as to leave this Court in doubt as to the point intended to be made; every intendment must be made against the appellant.

3. Among the printed matter endorsed on the policy is a stipulation as follows: "The Company shall have the option, when the insurance may be on goods, to supply goods of like kind, &c., and when the insurance may be on houses, &c., the Company shall have the option with all convenient speed to rebuild," &c. As we understand the case, the Company made no offer to rebuild before the action was commenced, or at any time before the trial or after the trial up this date, and the gravaman is, that the verdict is against the weight of the evidence.

With that question we have nothing to do, and we cannot advert to the testimony of several witnesses, professing to be master mechanics, except as tending to show that the prejudice of juries is against insurance companies. It can duly be construed by the Judge before whom the trial is had, whether it be the cause or the effect of the many references and counter references, in "the policy," to "the conditions endorsed," and in "the conditions endorsed" to the "application" and so in a circle, certain it is that the papers in a policy of insurance are so mixed up and involved that no ordinary man can be supposed to have perused and fully understood them.

4. "The defendant asked the Court to charge that from 'the application' it appeared that an inventory was to be taken every three months; that it was taken on the 1st January; 1872, and the fire occurred on the 4th of April, 1872, and that inasmuch as the plaintiff swore he had made no other inventory

than the one in January, he did not comply with the condition set out in the application and could not recover."

" This instruction was declined by his Honor, and defendant excepted."

The prayer for this instruction, although argumentative and not very happily expressed, raises the question as to the proper construction and legal effect of so much of " the application " as relates to the taking of inventories.

We think his Honor did not err in declining to give this instruction, and concur with him in the opinion that the construction contended for was an attempt to strain this clause of " the application " beyond the meaning, that can be fairly put on the words used, and to give to it the legal effect of a *condition* by which the policy was to be defeated and become of no force, by reason of a collateral matter not effecting and relating to the cause of the loss, but at most amounting to a mode of proof in respect to the extent of the loss, in the event of a fire when the omission would be compensated for, by the presumption which jurors are directed to make against all parties who have agreed, covenanted or warranted to do ðr not to do any act for breach of which they are liable in damages. The omission to take an inventory *at the very day* might have had its influence with the jury. But the notion that the omission to take an inventory of the goods in a country store *precisely* three months after the 1st day of January, 1872, and for no other reason than that the labor should be done, for how " the inventory is to be made or what is to be its form and purpose," how it is to be preserved and in what manner the defendant is to make it available, is not set out.

Look at the application, " questions and answers," and take it to be intended to be a part of the contract, or policy of insurance. " E. g., how often is account of stock taken ? When was it last, and what amount did it reach ? Answer: Every three months—1st January, 1872, $4,000." This is all that is written or printed.

Would it from these words enter into the head of any fair

minded man to suppose that by these words it was the intention of the insurance company to impose, or of the insured to enter into a condition to the effect that if from any cause he should omit to take an inventory of his stock of goods, *on the very day* of the expiration of three months after the 1st January, 1872, and so from three months to three months to the very day, not excepting Sundays or unavoidable or excusable causes of delay, the policy was to become void and of no force?

We have the authority of Lord Coke for the principle, but in truth, it needs no authority, a condition by which an estate is to be defeated or by which a right is not to accrue, must be expressed in direct words, and in the absence of direct words of condition the construction will be in favor of a warranty or covenant or stipulation to be satisfied by compensation or damages instead of a penalty or forfeiture of the entire amount.

If in our case, instead of a mere question and answer as to the inventory, apt words of condition had been used in substance: This application being the basis of the policy, and being so expressly referred to, now the condition of this policy is that provided the said Spencer D. Wynne shall fail at the expiration of three months, after the said 1st day of January, 1872, and of each succeeding three months thereafter, to make a full and complete inventory of his stock of goods and to enter the same upon his books, subject to the inspection of the insurance company, " then this policy is to be void. There would be sense in it—fair play."

But the suggestion that this provision, however artificial and cunningly inserted, can have the legal effect of a condition precedent, by which the policy of insurance is to be void and of no effect, cannot for a moment be entertained in a court of justice, without submitting to the degradation of being made an instrument of an insurance company to evade the payment of a loss fairly incurred upon grounds technical and untenable.

No error.

PER CURIAM.                         Judgment affirmed.