JOHN A. COLLINS v. THE FARMVILLE INSURANCE AND BANKING COMPANY.

*Fire Insurance—Construction of Policy—Additional Insurance— Waiver.*

1. Where a policy of fire insurance covered a stock of "drugs and medicines," and contained a stipulation that the policy should be avoided "if the insured shall keep gunpowder, fire works, *saltpetre*, &c; *It was held*, that the prohibition was not against keeping salt-petre as a drug, but only in such manner or quantity or for such purpose as would increase the risk.

2. Where in such case saltpetre was on hand as a part of the stock of drugs at the time the policy issued, being an article usually kept in drug stores, it was as a part of the stock insured, and although specially prohibited by the terms of the policy, the policy was not thereby avoided.

3. Where, in an action to recover on a policy of fire insurance, 't ap—

peared that at the time of the issuing of defendant's policy, additional insurance upon the property was taken out by the plaintiff with the same agent in another company, the consent of defendant being endorsed upon its policy ; and thereafter another company was substituted by the same agent in place of the second insurer ; and that such substitution was known to defendant, and that no complaint was made against it either at the time or after the fire when defendant was attempting to effect an adjustment of the loss ; *It was held,* that the fact that the substitution was made by defendant's agent with defendant's knowledge and without objection by defendant, constituted a waiver of the stipulation in its policy that no additional insurance should be placed upon the property insured, unless the consent of the company was endorsed upon its policy.

CIVIL ACTION tried at Spring Term, 1878, of HALIFAX Superior Court, before *Seymour, J.*

This action was brought to recover the amount of a fire insurance policy issued to plaintiff by defendant company upon a stock of drugs and medicines which were afterwards destroyed by fire. The facts applicable to the point decided by this Court appear in its opinion. Under the instructions of His Honor the jury found for the plaintiff. Judgment. Appeal by defendant.

*Messrs. Gilliam & Gatling* and *T. P. Devereux* for plaintiff. *Messrs. S. Whitaker* and *A. W. Haywood,* for defendant.

READE, J. The plaintiff was a druggist in Enfield, N. C., and the defendant insured him $1,200 on his stock of drugs and medicines in a one story building, &c., with a concurrent insurance on the same by the Alexandria Insurance Company of $1,800. This was in 1874, and the same was annually renewed up to 1877, when the store was destroyed by fire. During these years and several transactions there was a good understanding and a becoming liberality between the parties. Upon its coming to the attention of the plaintiff that he had not informed the defendant that he kept paints and oils, he informed the president of the com-

pany by letter of his omission, and the president wrote to him a liberal letter saying that the omission might technically have made the policy void, but the president thought the company would not take advantage of an inadvertence of that sort, but to put the matter beyond dispute, the president gave the plaintiff written permission to keep the articles.

It appears that while the plaintiff's principal business was that of a druggist, yet as in common with druggists in small towns, he kept various other articles. Nearly one half of his stock was other than drugs and medicines strictly speaking, but in common parlance it would be called a stock of drugs and medicines. After the fire this seems to have been the first trouble—the plaintiff supposing that his stock in the store was insured, while the defendants insisted that only the "drugs and medicines" were insured. And such is the language of the policy.

What then are " drugs and medicines? " This is not easily answered. Webster defines drugs to be " substances used in the composition of medicines; " and again, " used in dyeing or in chemical operations." It is clear that the defendant in the careful preparation of the policy ought not to have left a matter of that sort at large as a trap in which the plaintiff might be caught. This matter is however brought forward for the following specific purpose :—

1. The policy, even by the defendant's admission does insure the plaintiff's " stock of drugs and medicines in the house," &c. Well, is saltpetre a drug ? Yes, it is admitted to be. Was it a part of the stock as a drug? Yes, admitted to have been. Then it was specifically insured in the written and governing part of the policy. But the *small* print of the policy it is provided that if the sured shall keep gun powder, fire works, nitro-glycerine, phosphorous, saltpetre, &c., the policy shall be void."

Now the above articles are not necessarily drugs and medicines. The prohibition therefore is not against keeping them *as* drugs and medicines where a pound of saltpetre would be as harmless as a pound of alum, but against keeping them as articles of danger. With this construction the policy contract is just and reasonable; otherwise the policy insures saltpetre, and yet forbids the keeping of it. There is no allegation that it was kept otherwise than as a drug, and no objection is made to the quantity, and no pretence that any harm resulted from it. If the president of the defendant company had written after the fire as he did before, that his company would not insist upon technicalities or take advantage of inadvertences where no harm had resulted, it would have been doing gracefully what the Courts will compel to be done, whether or no. A substantial compliance with a contract is all that is required in any case. Where there has been a substantial compliance and good faith, technicalities will be disregarded by the Courts. The saltpetre which was in the stock as a drug, kept and sold as a drug, was insured; it was forbidden to be kept or used otherwise than as a drug, and in such manner, or quantity, or for such purpose as would increase the risk.

Wood on Insurance, page 840, is express authority for what I have said. " Where a policy is issued upon a stock of goods, such as are usually kept in a country store, it is held that all such goods as usually form a part of such a stock may be kept, although prohibited to be kept by the printed terms of the policy. * * * And when a policy covers a stock of merchandise which is in fact kept in a country store, although the words, *such as are usually kept in a country store,* are not used, the policy will not be invalidated by the keeping of articles embraced under the list of hazards, if the articles so kept are *usually* kept in such stores, although in the printed provisions of such policy, the keep-

ing of such articles is specially prohibited."

In our case saltpetre was on hand as a part of the stock of drugs at the time the policy issued; it is usually kept in drug stores, and it was always kept on hand in small quantities for retail as a drug; the stock of drugs was insured; therefore the saltpetre as a part of the stock was insured; and although it was specially prohibited in the printed terms, it does not avoid the policy according to the authority just quoted, for which he cites a number of cases.

2. As already stated, at the same time that the defendant issued its policy for $1200, the Alexandria company issued its policy for $1800 to the plaintiff, with the consent of the defendant endorsed on its policy. Indeed both policies were effected by the defendant's agent, who was also the agent of the Alexandria company. And the annual renewals were all in the same way by both companies with the concurrence of both, until the Alexandria company retired from business in North Carolina, when another company, "The Commercial," was substituted in its place by the same agent. There was evidence tending to show that the defendant knew of the substitution of one company for the other by its agent, and there was no complaint against it, and when the defendant was endeavoring to adjust the loss with the plaintiff, the substitution was well known and no objection made; and the only objection now made is the technical one that the change was not actually endorsed upon the policy. We do not mean to say that double insurance, as it is called, or increased insurance is a technical matter, quite the contrary. It is very important not only to the insurer whose risk is thereby increased, but to the public, as an over-insurance is a temptation to incendiarism; but here there was no over-insurance and no increase of the amount, but simply the substitution of one company for another with the knowledge of the defendant, and the only objection is that it was not entered on the policy. *That is*

*technical.* And we are of the opinion that the facts that the substitution was made by defendant's agent with defendant's knowledge, and no objection upon the attempted adjustment or before action brought, are a waiver of the objection that it was not entered on the policy.

In Wood on Insurance, § 496, it is said : "When the insurer knowing the facts does that which is inconsistent with, its intention to insist upon a strict compliance with the conditions precedent of the contract, it is treated as having waived their performance, and the assured may recover without proving performance ; and that, too, even though the policy provides that none of its conditions shall be waived except by written agreement.    *    *    * And such waiver may be implied from what is said or done by the insurer.   So the breach of any condition in the policy as against an increase of risk or the keeping of certain hazardous goods,   *   *   *   or indeed the violation of any of the conditions of the policy may be waived by the insurer, and a waiver may be implied from the acts and conduct of the insurer after knowledge that such conditions have been broken."   So again, § 497: "When other insurance is required to be endorsed upon the policy, if notice thereof is given to the insurer or his agent, and consent is not endorsed, nor the policy canceled, further compliance is treated as waived and the insurer is estopped from setting up such other insurance to defeat its liability upon the policy, and the same is true when the *same* agent issues both policies, although consent is not endorsed on either policy."

That is precisely our case.   And the author is well supported by authority.   And withal it is so just and reasonable that we would lay down the same doctrine even if it were of the first impression.

There were several other objections taken below by the defendant, and while they were not abandoned, they were very properly not pressed in this Court by the counsel who

presented the defendant's case with great force. We have examined them, however, and find no error.

No error.

PER CURIAM.                                   Judgment affirmed.