\*W. F. GRUBBS et al. v. THE NORTH CAROLINA HOME INSURANCE COMPANY.

*Insurance Companies— Waiver of Condition—Power of Agents— Sub-agents—Evidence—Adjuster—Estoppel—Notice—Requests for Instruction—Measure of Damages— Comment of Counsel.*

1. An agent of an insurance company authorized to take risks and issue policies is empowered to waive by parol a condition in a policy issued by him.

2. In an action against an insurance company for damages for loss by fire, it was shown that there was, within the knowledge of the plaintiff, a condition in the policy to the effect that the insurance company should not be liable for loss, if there was any prior or subsequent insurance, whether valid or invalid, without the written consent of the company endorsed. There was evidence that the plaintiff, shortly before taking out additional insurance in other companies, mentioned such intention to the company's sub-agent, who had issued its policy to plaintiff, and he said it would be all right. The Court told the jury, in effect, that this was a waiver, and they so found: *Held,* no error.

3. Where, after a fire, the adjuster of an insurance company joins the agents of other companies in their efforts to adjust the loss, requires the production of the books and invoices, or duplicates in case of their destruction, and objects to settling only on the ground that he cannot agree with the insured as to the amount of loss, the company represented by such adjuster is estopped from insisting on a forfeiture by reason of the breach of any of the conditions relating to additional insurance.

4. If the acts of the adjuster were, in effect, a waiver of the condition, the defendant could not complain of the refusal of the Court to submit an issue of *notice* of the additional insurance.

5. It is not error to refuse to consider written requests for instructions, unless presented to the Court at or before the close of the testimony.

6. The measure of damages is the fair cash value of the property destroyed at the time and place of its destruction.

---

\*CLARK, J., did not sit.

7. The fact that a witness, who was present at a conversation had between the plaintiff and defendant's agent, was not called to contradict the plaintiff. though present in Court assisting defendant in the trial, is a legitimate subject for counsel's comment.

MERRIMON. C. J., dissented.

This was a CIVIL ACTION, tried before *Womack, J.*, at January Term, 1890, of NORTHAMPTON Superior Court, to recover· damages against the defendant for the loss by fire of certain property insured by the defendant as set forth in the pleadings. The defendant tendered, among others, the following issue :

5. Was the insurance in the Pelican Insurance Company, Liverpool, London and Globe Insurance Company, Virginia Fire and Marine Insurance Company, and in the Mt. Vernon Insurance Company made known to the defendant?

·The issues submitted, with the responses to each, were as follows :

1. " Did the defendant make the contract of insurance set out in the complaint? Answer: Yes, by consent."

2. " What was the value of the goods destroyed by the fire? Answer: $7,400."

3. " Did the plaintiff furnish to the defendant the proof of loss, in compliance with the conditions of the policy? Answer: Yes."

4. " Did the plaintiff procure the additional subsequent insurance upon the insured property alleged in the answer? Answer: Yes."

5. " Was the defendant's consent to such additional insurance, if any, indorsed on said policy? Answer: No."

6. " Did defendant waive such written consent, if none was indorsed? Answer: Yes."

7. " Did the plaintiff comply with the other conditions of the policy on their part? Answer: Yes."

8. " Was said policy, after the fire, assigned to the plaintiff Hardy as alleged in the complaint? Answer: Yes."

Judgment was rendered for plaintiffs. Defendant appealed. The other facts are sufficiently set out in the opinion.

*Messrs. R. O. Burton, Jr., R. B. Peebles* and *W. C. Bowen,* for plaintiff.

*Messrs. J. W. Hinsdale, T. W. Mason* and *B. S. Gay,* for defendant.

AVERY, J.—after stating the facts: The defendant asked the Court to instruct the jury that, upon consideration of all the evidence, there was no waiver of the condition of the policy, requiring the written consent of the defendant to be endorsed upon it provided the plaintiff should take out additional insurance in other companies. This request was equivalent to a demurrer to the whole of the evidence, it being admitted that additional insurance was taken out in other companies after the policy sued on was issued, without first securing the written endorsement of the defendant's consent upon it in accordance with the express requirement of one of its conditions.

If Dr. Ramsey, the agent with whom the plaintiff treated, was authorized to take fire-risks and issue policies, he was empowered to waive by parol a condition in a policy issued by him. *Winans* v. *Ins. Co.,* 38 Wis., 342; *Miner* v. *Ins. Co.,* 27 Wis., 693; *Gore* v. *Ins. Co.,* 53 Wis., 108; *Phœnix Ins. Co.* v. *Spiers,* 87 Ky., 285; *Kitchin* v. *Ins. Co.,* 57 Mich., 135; *Westchester Ins. Co.* v. *Earle,* 33 Mich., 143; *Veile* v. *Ins. Co.,* 26 Iowa, 63; Wood on Fire Insurance, § 391; *Sherman* v. *Ins. Co.,* 46 N. Y., 526; *Fishbeck* v. *Ins. Co.,* 54 Cal., 422

Where a general agent permits a sub-agent acting under his direction to receive premiums from, and to fill up and deliver policies to the insured, the acts of the sub-agent are regarded as the acts of the general agent. *Continental Ins. Co.* v. *Ruckman,* 127 Ill., 365. The powers of an agent are *prima facie* co-extensive with the apparent authority given

him, and persons dealing with him may judge of their extent from the nature of the business entrusted to his care. Wood on Insurance, § 500; *Hornthal* v. *Ins. Co.*, 88 N. C., 71; *Beall* v. *Ins. Co.*, 16 Wis., 241; *Davenport* v. *Ins. Co.*, 17 Iowa, 276.

Though the authorities are conflicting upon many questions that have arisen as to the powers of insurance agents generally to bind the companies for which they act, there is a growing tendency to abrogate rules laid down by some of the Courts when the insured sought the principal officers of these corporations in the larger towns and asked the agents to forward applications for insurance, instead of waiting at their homes for agents sent to solicit their patronage and stimulated to active and persistent effort by their employers. We concur with the Judge below in the opinion that if Dr. Ramsey was entrusted by the defendant (as he testified that he was) with the blank applications, and with its policies duly signed by its officers, and was authorized to take risks without consulting the company, to issue policies by simply signing his name as agent, to collect premiums and cancel policies, then he was empowered, as agent, to waive the condition that no additional insurance should be taken. In the case of *Westchester Ins. Co.* v. *Earle*, *supra*, an agent, when asked about the taking of additional insurance, said, in substance, that it would make no difference, but, without saying it in so many words, left the inference that consent in writing was not necessary, and the Court held that the agent had waived a condition in the policy similar to that in plaintiff's policy, and that the insurers could not avoid liability under the contract because additional insurance was subsequently taken in another company without asking for or securing the endorsement of its written consent on the original policy. See also *Goré* v. *Ins. Co.*, *supra*. After testifying that he was permitted by the defendant to exercise all of the powers enumerated by the Court in the foregoing instructions, Dr. Ramsey stated also that Grubbs did say to

him that he would want further insurance, and that he (Ramsey) replied *that he thought* Grubbs could get it if he wished; *that he did not remember any more of the conversation on that subject.* The witness Gay testified that Ramsey said to Grubbs, when asked about further insurance, that it was all right, so that he did not insure for more than three-fourths the value of the stock. Grubbs testified that he told Ramsey the exact amount of insurance that he proposed to place, and did take, in each of the other companies, which did not in the aggregate exceed three-fourths of the value of the property insured. So that the facts in our case would more naturally warrant the inference that the agent did not require his assent to be endorsed in writing on the policy than the evidence in the Michigan authority cited above, because Ramsey not only conveyed the idea that it would be all right to get additional insurance, but added the condition that the whole insurance should not in the aggregate exceed three-fourths of the value of the property insured, thereby excluding the inference that he would insist upon any other condition. But, even upon his own testimony, Ramsey was empowered to waive the endorsement, and if, after Grubbs notified him of the amount which he proposed to take, and did afterwards take, in each of the other companies, Ramsey, by his language, left Grubbs to infer that no objection would be made unless the aggregate amount of insurance in all of the companies should exceed three-fourths of the value of the insured property, and Grubbs did not exceed that limit; then, if Grubbs was induced to believe that the forfeiture would not be insisted on unless the limit in the amount of insurance should be transcended, and acted under that impression in effecting additional insurance, that condition of the policy would be considered as waived by the company. We think, therefore, that there was no error in the rulings of the Judge below upon which the sixth, fourteenth, fifteenth, sixteenth and seventeenth exceptions are founded. It seems

that some of the counsel abandoned, while other counsel insisted upon, the exceptions numbered from one to eight inclusive, and so much of exception ten as referred to the refusal of the Court to give special instructions asked by defendant, and numbered seven. If, after a breach of the conditions of a policy, the insurers, with a knowledge of the facts constituting it, by their conduct lead the insured to believe that they still recognize the validity of the policy and consider him as protected by it, and induce him under such impression to incur expense, they will be deemed to have waived the forfeiture, and will be estopped from setting it up as a defence. *Viele* v. *Ins. Co.*, 26 Iowa, 9, and *ibid.*, Note, p. 68; *The Orkosh Co.* v. *Ins. Co.*, 71 Wis., 454.

Where, with a knowledge of the facts constituting the alleged waiver, the insurer, after the insured property had been destroyed by fire, requires the insured to furnish invoice of goods destroyed, proofs of loss, or plans and specifications of the building burned, or to appear for examination, such acts of its adjuster amount to a concession that the forfeiture for failure to secure the endorsement of additional risks will not be insis'ed upon. *Penn Fire Ins. Co.* v. *Kittle*, 39 Mich., 51; *Titus* v. *Ins. Co.*, 81 N. Y., 410; *Conner* v. *Ins. Co.*, 53 Wis., 585; *Webster* v. *Ins. Co.*, 26 Wis., 67. Where, after a fire, the adjuster of a company joins the agents of other companies in the effort to adjust the loss, requires the production of books for examination, and asks for invoices from the time the insured went into business, and, the invoices not being furnished because of their destruction by fire, then asks for duplicates, which the insured endeavored, by correspondence with creditors, to get, and objects to settling on the ground only that he cannot agree with the insured as to the amount of loss, and offers to pay for his company its proportion of the loss as estimated by him, the company represented by such adjuster is estopped from insisting upon a forfeiture by reason of the breach of any conditions in the

policy in reference to taking additional insurance. *Fishbeck* v. *Ins. Co., supra; Argall* v. *Ins. Co.,* 84 N. C., 353. See especially opinion of COOLEY, J., in *Penn Fire Ins. Co.* v. *Kittle, supra.*

The testimony admitted after objection, and constituting the ground of exceptions four, five and seven, will therefore appear at a glance to be competent, if our view of the law in reference to waiver by conduct subsequent to the loss, and inconsistent with the idea of insisting upon a forfeiture for failure to comply with the conditions set forth in the policy, be correct. It would follow also, from the principle laid down by us, that there was no error in so much of his Honor's charge as relates to the doctrine of waiver by the acts of the defendant's agents after the property was destroyed, and this applies to the thirteenth, eighteenth and nineteenth exceptions.

The defendant excepted to the refusal of the Court to submit an issue involving the question whether the fact that plaintiff had obtained additional insurance in the other four companies was made known to the defendant before the fire occurred. It does not appear that the refusal of the Court to allow the jury to answer such an issue, specifically, deprived the defendant of the opportunity to have presented to the jury any view of the law arising out of the testimony that was material to his defence, and there was, therefore, no error in the ruling complained of. *McAdoo* v. *Railroad,* 105 N. C., 151; *Emry* v. *Railroad,* 102 N. C., 209; *Lineberger* v. *Tidwell,* 104 N. C., 510; *Bonds* v. *Smith,* 106 N. C., 564. Indeed, it is apparent that, according to our view of the law governing this case, it is not material whether Primrose and Cowper, the president and adjuster of the defendant company, or the agent, Ramsey, had notice of the additional insurance before the loss, since it is not denied that they had actual notice after the fire, and when Cowper, according to the testimony, so acted as to waive the right of the company

to insist upon a forfeiture of the policy.    Besides, it seems that, in order to make the issue tendered subserve the proposed purpose, it would be necessary now to amend it by interpolating the words "prior to the loss," and it is rather late to amend defective exceptions in this Court.

The ninth exception is stated in the record as follows:

"During the morning session of the Court, and pending the argument of counsel, the Court gave notice to counsel that no special instructions would be considered which were not presented at the convening of Court for the afternoon session.    Near the conclusion of the speech of Mr. Mason, who closed for the defendant, just at night, the defendant presented an additional special instruction, which was not considered for the reason that it was not presented in apt time.    Upon the conclusion of the speech of Mr. Mason the Court took a recess until after supper, when Mr. Burton closed for the plaintiff."

It was not error to refuse to consider written requests for instructions unless presented to the Court at or before the close of the testimony.    *Marsh* v. *Richardson*, 106 N. C., 548; *Taylor* v. *Plummer*, 105 N. C., 56; *Powell* v. *Railroad*, 68 N. C., 395.

The eleventh exception is stated in the record as follows:

"There was evidence tending to support the eleventh and twelfth instructions asked by the defendant    The plaintiff's evidence tended to show that the cost of the goods, with five per cent. added for cost of transportation, amounted to $8.218.31, made up of the amount of inventory taken of August 8th, 1889, $5,852.71; and subsequent purchases show by his ledger account, and certain stocks of goods purchased from assignees, etc. (about $475 worth), $4,007.68, deducting the amount of sales from August 8th to the time of fire, $1,478.01 in cash sales, and $1,582.10 in credit sales, upon which there was an average profit of thirty per cent.; that his purchases were upon thirty days and four months, and

that a discount of from one to two per cent. could have been obtained by purchasing in cash; that the value was, at least, $7,400.

"The defendant's evidence tended to show that the value of the stock of goods did not exceed $3,500 or $4,000 at the time of the fire.

"His Honor charged the jury, on the second issue, that the measure of damages was the fair cash value of goods at the time and place of the fire, and recapitulated the evidence *in extenso* as to the respective contentions of the parties on the question of damages. The defendant excepted."

The rule laid down in this Court is substantially the same as that stated for the Court by Justice READE in *Fowler* v. *Ins. Co.*, 74 N. C., 89, and is expressed in almost identical language. In that case, as in ours, a stock of goods had been destroyed by fire, and the Court held that "the measure of damages against the defendant is the *market value* of the goods (within the amount insured) *at the time and place of the fire.*" His Honor substituted "fair cash value" for "market value." We can see no material difference between the words used in the opinion referred to and the language of the charge. This Court in that case cited May on Insurance, § 424, and the authority fully sustains the rule announced. Wood (in his work on Insurance, § 445) says that one who takes out a policy on a stock of goods can recover "only *such sum* as the goods were actually worth *at* the time of the loss, not what they cost him, *not necessarily what it would cost him to replace the goods*, but the *sum which the goods* were worth when they were destroyed by the casualty insured against." The cost of the property in the market may be shown as one of the elements, but not the test, of its value when destroyed, and, on the other hand, it is competent for the insurer to prove that there was a deterioration in the value of the goods after the purchase and before the loss, which, if not resulting merely from temporary depression in

the market, will tend to establish the value at the time of the fire. The damage depends upon the ascertainment of the amount for which the property can be sold, and that in turn depends upon its actual value at the time and place of the fire. Wood on Insurance, p. 765, § 445; *Western Ins. Co.* v. *Transportation Co.*, 12 Wall., 201. In *Wynne* v. *Ins. Co.*, 71 N. C., 125, the Court construed the statement that the jury had found "the value of the stock on hand to be $2,600," to mean just the same as if they had found that "the damage on account of the destruction of the goods" was $2,600, thus indirectly giving sanction to the rule laid down by the Judge below in this case.

In *Bobbitt* v. *Ins. Co.*, 66 N. C., 70, the Court said, "the value of the tobacco was what it *was worth then and there*— what it would have sold for then and there"—and it would seem that there is no material difference between this rule and the charge of the Judge that the "measure of damage was the fair cash value at the time and place of the fire." It is not material that the Court declared that the value of a staple, like tobacco, at any particular point might be determined as well in another way by ascertaining the price in the usual markets, and deducting stamp duty, the cost of transportation, and other usual and necessary expenses. But it was not in fact necessary to have passed upon the question of the *quantum* of damages in that case at all.

The fact that Mr. Johnson, who was a witness for the defendant, and who was present in the Bar and aiding the defendant's counsel in the conduct of the case, was not examined to contradict the plaintiff Grubbs as to what occurred when he and Cowper came to adjust the loss, was a legitimate subject of comment, and it was not error to refuse to stop counsel from using the fact as an argument to show that the testimony of Grubbs should be believed.

We understand that the twelfth exception was abandoned. It was, at any rate, a waste of time to discuss it.

108—31

Upon a review of all the assignments of error, we think that there is not sufficient ground for a new trial, and that the judgment below should be affirmed.

MERRIMON, C. J.—dissenting: The policy upon which this action is founded contains this provision, which is expressly made a material part of the contract of insurance: "This company will not be liable for   *   *   *   loss if there be any prior or subsequent insurance, whether valid or invalid, without *written consent* of the company endorsed hereon." The plaintiffs were not inadvertent to this provision. It clearly appears that they had actual knowledge of and understood its meaning and purpose. It is clear that it was a material part of the contract.

It is contended, however, by the plaintiffs that the defendant *waived* this provision and the condition embodied by it, and this contention is founded upon this evidence: "The witness (one of the plaintiffs) then proceeded to say, that after insuring in the defendant company he had a conversation with Dr. J. N. Ramsey, agent of the defendant company, before he took out additional insurance, telling him that he wanted additional insurance, and that Dr. Ramsey said it would be all right." This witness, in reply to further interrogatories, objected to by the defendant, said "he told Ramsey that he wanted additional insurance in the Pelican Insurance Company and the Virginia Fire and Marine Insurance Company; the conversation was in his store; that later on he said he wanted additional insurance in the Liverpool, London and Globe Insurance Company, and in the Mt. Vernon Insurance Company; that he did not know who was present, except his clerk, R. T. Gay; that Ramsey said it would all be right, so that he did not take out policies over three-fourths value of the goods; that he had two conversations with Ramsey, and told him that he had an idea of taking additional insurance; that he said it was all right; that

he told him that he wanted $2,000 in the Virginia Fire and Marine, and $1,000 in the Pelican; the second conversation he told him that he wanted $500 in the Liverpool, London and Globe and $500 in the Mt. Vernon; that these conversations were before the additional insurance was effected." Another witness' said he "heard the conversations between Grubbs and Ramsey; Grubbs said that he did not have insurance sufficient; that Ramsey said it was all right, so that he did not get more than three-fourths value of his stock."

Dr. J. N. Ramsey, mentioned, testified "that a few days after he issued the policy to the plaintiff sued on, Grubbs said to him that he would want further insurance; that he said to him that he thought that he could get it if he wished it; * * * that he did not know that Grubbs was insured in any other company until after the fire."

The plaintiffs obtained additional insurance in other companies, and it was admitted that no written consent was endorsed upon the policy sued upon that the plaintiffs might take such or any additional insurance upon the property insured by the defendant.

Now, it seems to me, that putting aside all question as to the authority of Ramsey, as agent of the defendant, to waive the condition in question, the evidence accepted as true did not, in any fair view of it, constitute such waiver. The plaintiffs knew of the condition that if they took other further insurance without consent on the part of the defendant written on the policy sued upon, the latter would be void. They did not ask Ramsey, the agent, to waive the condition, to say that further insurance might be taken without consent written on the policy, nor did they give him or the defendant notice that they had taken further insurance, nor did the defendant, or its agent, have such notice until after the loss; at most, they only suggested their desire and purpose to obtain more. Nor did Ramsey tell them that they might take other insurance without having consent of the

defendant endorsed on the policy sued upon, and that they might do so without notice to him or the defendant. The fair and just interpretation of what and all that was said by the plaintiffs and Ramsey is, that the former suggested their wish and purpose to obtain further insurance, and the latter said, in reply, they might do so, not exceeding two-thirds of the value of the property insured, in the way and as contemplated by the policy of the defendant held by the plaintiffs. Ramsey did not say they might do otherwise. What motive or reason had he to waive the condition? And what reasonable ground was there to merely infer that he did? And what just reason had the plaintiffs to believe that the agent consented to or intended such waiver? And is it not clear that plaintiffs carelessly and negligently failed to have the defendant's consent written on the policy, or that they felt apprehensive that the defendant would not consent? *Collins* v. *Insurance Co.*, 79 N. C., 279; *Sugg* v. *Insurance Co.*, 98 N. C., 143; *Hansus* v. *Insurance Co.*, 111 Ind., 90; *Henly* v. *Insurance Co.*, 5 Nev., 268; May on Insurance, §§ 369, 372; Wood on Insurance, § 496.

It is further contended that the defendant, after the plaintiffs sustained the loss, waived the condition in question, or is estopped to claim and have benefit of the same, in that its agents took steps to ascertain the extent of the loss, with a view to pay what it might be liable for upon the policy. But the defendant's agents did not say their purpose was to waive the condition; nor was there any fair implication that they did; nor was there any consideration for such waiver. The mere fact that such inquiry was made could not reasonably or justly be treated as such waiver or an estoppel. The defendant might, without waiving any right or defence, make such inquiry in order to learn what it ought, without regard to its legal liability, fairly to pay, if anything. It might by such inquiry ascertain whether the loss was fairly sustained— whether the insurance was too great—whether the stock of

goods was as great as represented, or whether the same was over-valued, etc. Simply such inquiry ought not to conclude the defendant as to any proper defence it might have. So far as appears there are no considerations, valuable or otherwise, that in their nature do or ought to so conclude the defendant. It does not appear that the defendant was not in some way prejudiced by the additional insurance. May on Ins., § 507 (2 Ed).

The contract of insurance is plain and unequivocal in the respect in question. The plaintiffs clearly understood its meaning and purpose. It is the duty of the Court to uphold and enforce it in its integrity, as it affects the rights created by it of both parties. Reasonably and justly a waiver of any material part, provision or condition of it, to be effectual, should appear, not by mere conjecture or inference, but by evidence that reasonably tends to prove the same, and the burden in this respect is on the plaintiffs. I do not think there was such evidence in this case.

*Per Curiam.*                                                    Affirmed.