## BEAL VS. THE PARK FIRE INSURANCE CO.

Where an insurance policy had been issued in the name of an insurance company, by a person acting as its agent, but of whose authority so to act was not shown, and such policy had been renewed by an authorized agent of the company. *Held* that the company had ratified the act of the party issuing the policy, and that his acts and declarations at the time the risk was taken were admissible in evidence against the company.

S. without written application therefor on a survey made by an agent of the company, procured a policy of insurance on his stock of furniture, cabinet ware, &c., situate in a building, the east and west walls of which were stated in the policy *to be entire*, and by the terms of the policy it was to be void, if the building should be used for carrying on or exercising therein any trade or business denominated extra hazardous or hazardous, without the agreement of the company thereto endorsed on the policy; and such policy was once renewed, a new survey being made; in an action on the policy where the defence was, that the west wall of the building was not entire, but that there were two doors through the same; and that the insured carried on in the building at the time the loss occurred, an extra hazardous business, viz: cabinet making and upholstery manufacturing, without any agreement therefor endorsed on the policy.

*Held,* 1st. It was competent for the plaintiff to give parol evidence, to show that at the time the risk was taken and said policy renewed and surveys made, the agents of the company knew of the existence of the doors in the west wall, and that they knew that cabinet making and upholstery manufacturing was then being carried on in the building.

2. It appearing that there was no fraud or misrepresentation committed by the insured, and everything relating to the risk, was done in the belief that after the agents had visited and examined the premises, the policy would be filled up so as to make it valid between the company and the insured, and the building con-

tinued in the same condition and to be used for the same purposes as when the risk was taken; the defence set up could not prevail, and the company was estopped from taking advantage of the acts of its agents, done within the scope of their authority.

3. An insurance company will not be allowed to take advantage of the mistakes or omissions of its agents, notwithstanding the rule that all parol statements and negotiations are merged in the written contract.

APPEAL from the County Court for *Milwaukee* County.

Action on a policy of insurance for $1,200, issued by one *Hyer* acting as the agent of the defendant, to *Alonzo D. Seaman* and by him assigned to the plaintiff after the happening of the loss in question. The policy purported to insure said *Seaman* "against loss or damage by fire, to the amount of twelve hundred dollars on his stock of furniture, cabinet and upholstery ware and materials and other merchandise, kept and used by him, not hazardous and extra hazardous, contained in the five story brick building, one hundred by sixty feet; walls of the first and second stories 20 inches thick, fourth and fifth stories 16 inches thick, and extend above the roof, covered with patent cement; *east and west walls entire;* divided into five tenements on first floor; situate on the south side of Huron street, (80 feet wide) on lot number one in block number fifteen in the third ward of the city of Milwaukee, during one year, to-wit, from the 16th day of August, A. D. 1859," and it was alleged that the policy was by the authorized agent of the defendant on the 16th day of August, 1860, renewed for one year from that time, during which time the loss occurred. The complaint contained the usual allegations in such actions.

The answer alleged 1st., That Seaman in and by the policy warranted that the side walls on the east and west sides of the building were entire at the time of issuing the policy, when there was an opening and door on the first floor of the building in the west wall thereof, and another opening and door in the same wall in the upper story, both of which openings increased the risk. 2. That *Seaman* to procure the policy, rep-

resented that the east and west walls of said building were entire, which representation was material to the risk, and was untrue as to the west wall in the respects above stated. 3. That it was agreed between the defendant and *Seaman,* in and by the policy, that if at any time during the time the policy should continue in force, the building and premises described therein, should be appropriated, applied, or used to or for the purpose of carrying on or exercising therein, any trade or vocation, denominated hazardous or extra hazardous, in the memorandum of special rates and conditions annexed to said policy, except as therein before provided or thereafter agreed in writing and added or endorsed on said policy, then and from thenceforth, so long as the said building should be so used or applied, said policy should cease and be of no effect; that upholstery manufacturing and cabinet making were among the trades denominated extra hazardous in the terms and conditions of said policy, and that for some time before and up to, and at the time of the happening of the loss, said *Seaman* appropriated and used a part of said building and premises for carrying on the business of a cabinet maker and for a manufactory of upholstery, contrary to the terms and conditions of said policy, and without any agreement on the part of the defendant that he might do so, and that the fire that occasioned the loss, originated in that portion of the building so used and occupied, by means whereof said policy was rendered of no effect. At the trial, before the court and jury, the plaintiff called said *Seaman* as a witness, who testified that he procured the policy in question to be executed. The plaintiff's counsel asked the witness to state how that policy was procured. The defendant's counsel objected thereto, but the court overruled the objection and the defendant excepted. Answer. " A man by the name of *Hyer* came to my office and solicited me to insure in that company. *Hyer* went through the building, made a survey and filled out this policy and I have no recollection of making a written application." The plaintiff's

counsel then asked the witness to state whether at the time this survey was made, the building was occupied in the same manner that it was at the time of the fire, to which the defendants counsel objected, but the court overruled the objection, and the defendant excepted.   The witness testified, we moved into that building in 1858; we first moved our upholstery manufactory and varnishing rooms; upholstery and varnishing were carried on in the building before we moved our stock; a month afterwards we moved our stock and after that the manner of occupying the building was not changed before the fire. The witness was further allowed by the court against the objection of the defendant's counsel to testify that the openings in the wall, were the same at the time this survey was made, as at the time of the fire.   That he (*Seaman*) did not give any direction as to the form and filling up of the policy, and did not look at it, except at the outside of it, when it was renewed, *Mr. Hatch* came down to his office and took a second survey, and after that the renewal receipt was executed.   To the ruling of the court admitting this evidence, the defendant excepted.

A. W. Hatch testified on the part of the plaintiff.   "At the time the renewal receipt was executed, I was solicitor of insurance for the defendant.   Mr. Baker and Mr. Alexander were its agents.   I filled out the renewal and Mr. Alexander signed it."   The counsel for the plaintiff asked the witness to state whether the openings in the east and west walls of said building were the same, and the occupation of it was the same when the certificate of renewal was executed, as at the date of the fire, to which the defendant's counsel objected.   The court overruled the objection and the defendant excepted.   The witness answered.   "I went through the building with Mr. *Seaman*; I think that there were the same openings in the walls at that time, as at the time of the fire; in the lower stories at that time, they stored furniture, in the third story they were at work finishing, rubbing and varnishing furniture; in the upper story they were making upholstery.   There was no

work done in that building but such as comes within the legitimate business of cabinet and upholstery manufactories." The defendant to prove his case called the said *Seaman* as a witness, who testified there were two openings used as doors in the west wall of the building described in the policy, one in the first story and one in the fifth story; the east end of the upper story was occupied as an upholstery room. The fire that consumed the building took in that room. This was all the testimony given. The court directed the jury to find a verdict for the plaintiff, to which direction the defendant excepted. The jury having found a verdict for the plaintiff upon which judgment was rendered in his favor, the defendant appealed.

*E. Mariner*, for the appellant. 1. The plaintiff should have averred that his goods were situate in a building constructed and situated in the manner stated in the policy set out in the complaint. All the specifications as to the manner of constructing the building were warranties, and should have been averred and proved as set out in the policy. Marshal's Ins., 346–9 ; Arnold's Ins., 557 ; 6 Cow., 673 ; 7 Wend. 270 ; 1 Edw. Ch., 64, and cases there cited. 2. The court erred in its ruling admitting evidence at the trial. The evidence admitted, operated to contradict the written contract and was clearly inadmissable. 2 Denio 75, and cases there cited ; 3 Seld., 370 ; 18 N. Y., 385 ; 6 Wend., 488. 3. The court erred in directing the jury to find a verdict for the plaintiff. There had been neither averment nor proof of compliance with the warranties in the policy ; on the contrary, the defendant had proved one of them false, and the plaintiff had proved the third defense set out in the answer.

*Cary & Pratt*, for the respondent, cited Ellis on Ins., 81 ; *Frost vs. Saratoga Ins. Co.*, 5 Denio 154 ;. *Ames vs. The N. Y. Union Ins. Co.*, 14 N. Y., 253 ; *Dodge Co. Mutual Ins. Co. vs. Rogers*, 12 Wis., 337.

*By the Court*, DIXON, C. J.   The company had ratified the acts of Hyer as their agent to solicit insurance.   Hyer filled out the policy; it was subsequently renewed by an agent, whose authority was not questioned and its due execution was not denied by the answer.   The company could not ratify for its benefit and repudiate when adversely interested.   The evidence of Hyer's acts and declarations at the time the risk was taken, together with those of the renewing agent, Hatch, and also the testimony of the latter, were properly received, unless as urged by counsel, they should have been excluded on the ground that they contradicted the written contract set forth in the policy and conditions annexed.   There is little doubt that such was the effect; yet without intending to question the rule that parol evidence is inadmissible to vary written instruments, we are of the opinion that the evidence was properly received.   That rule is encountered by, and as we think, must yield to another rule in this case, which is, that no one should take advantage of his own mistake or wrong, to the injury of another who is innocent.   The policy was issued and renewed at the solicitation of the company, without written application on the part of the insured, and upon the personal inspection and survey of the premises by its agents.   There is no pretense of fraud or misrepresentation on the part of the insured, that he did anything to deceive or mislead the agents or to prevent their acquiring full knowledge of the nature and extent of the risk.   Everything was done in the full belief, that after visiting the premises, the agents were competent to, and would so fill up the policy as to make it valid between the company and the insured.   They saw, or might have seen, the openings in the walls and knew the uses to which the building was put and which remained unchanged to the time of the fire.   With this knowledge or means of knowledge, they delivered and subsequently renewed the policy and received the premiums.   If they did so, intending the policy to be void, it was a gross fraud.   If it was a mistake, the condition of the company

is no better.   In either case it is precluded from taking advantage of the acts of its agents done within the scope of their employment.   For those reasons we think the testimony was admissible and   that the judgment should be   affirmed. *Hough vs. City Fire Insurance Co.*, 29 Conn., 10, presented a similar question.   The applicant described the property in his written application as "*his house*" and it was so described in the policy.   The policy contained this condition.   "If the interest in the property to be insured is not *absolute*, it must be so represented to the company, and expressed in the policy in writing; otherwise the insurance shall be void."   The legal title to the property was in another with whom the insured had at the time of the application, made a parol contract for its purchase for a price agreed upon, a part of which had been paid and the insured was in possession.   The application was filled out by an agent of the company.   Upon the claim of the company, in a suit upon the policy, that the insurance was void by reason of the omission of the insured to state in the application, the condition of the title, parol evidence was admitted to show that the insured stated to the agent the exact facts as to the state of the title.   The ground of admission was, that the mistake was that of the agent of which the company ought not to be allowed to take advantage, notwithstanding the general rule, that all parol statements are merged in the written contract.

Judgment affirmed.