(February 22, 1922.)

NETTIE SWETLAND, Respondent, v. THE NEW WORLD LIFE INSURANCE COMPANY, a Corporation, Appellant.

[206 Pac. 190.]

LIFE INSURANCE—FORMATION OF CONTRACT—WAIVER.

1.   Where an application for life insurance contains a provision that the policy shall not take effect unless the application shall have been approved by the company and the first annual premium shall have been paid during the good health of the applicant, a contract of insurance is not effected upon the approval of the application unless payment of the first premium has been made or waived.

2.   The record examined, and *held* that there is insufficient evidence to show a waiver of payment of the first premium.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County.   Hon. Ed. L. Bryan, Judge.

Action to recover on life insurance policy.   Judgment for plaintiff.   *Reversed.*

Graves, Kizer & Graves and C. C. Cavanah, for Appellant.

The policy in suit never became effective, because the first annual premium, which was a condition precedent to the policy taking effect, was not paid during the continuance of Swetland in good health, or paid at all, nor was there any waiver of payment of said premium by the defendant. (*Rathbun v. New York Life Ins. Co.*, 30 Ida. 34, 165 Pac. 997; *Cranston v. West Coast Life Ins. Co.*, 63 Or. 427, 128 Pac. 427; *American Bankers' Ins. Co. v. Thomas*, 53 Okl. 11, 154 Pac. 44; *Yount v. Prudential Ins. Co.* (Mo. App.), 179 S. W. 749; *Boston etc. Transfer Co. v. Contractors'*

Publisher's Note.

1.   Effect of acceptance of note for life insurance premium, see note in 1 **Ann. Cas.** 967.

*etc. Ins. Co.,* 226 Mass. 372, 115 N. E. 494; *John Hancock etc. Ins. Co. v. McClure,* 218 Fed. 597, 134 C. C. A. 355; *Missouri State Life Ins. Co. v. Salisbury,* 279 Mo. 40, 213 S. W. 786; 1915 Sess. Laws, 393; 40 Cyc. 249–261, 269; 29 Am. & Eng. Ency. of Law, 1093–1096, 1105; *Virginia etc. R. Co: v. Hawk,* 160 Fed. 348, 87 C. C. A. 300; *Samulski v. Menasha Paper Co.,* 147 Wis. 285, 133 N. W. 142; 21 R. C. L. 81–83; *Pride v. Continental Cas. Co.,* 69 Wash. 428, 125 Pac. 787; *Randall v. Travelers' Ins. Co.,* 206 Mich. 418, 173 N. W. 388; *Stringham v. Mutual Ins. Co.,* 44 Or. 447, 75 Pac. 822; *Union etc. Ins. Co. v. Pauly,* 8 Ind. App. 85, 35 N. E. 190; *Bowen v. Mutual etc. Ins. Co.,* 20 S. D. 103, 104 N. W. 1040; *Mutual etc. Ins. Co. v. Lucas,* 25 Ky. Law Rep. 2052, 79 S. W. 279; *Brady v. Northwestern etc. Aid Assn.,* 190 Pa. St. 595, 42 Atl. 962; *Selman v. Manhattan etc. Ins. Co.,* 20 Ga. App. 440, 93 S. E. 60; *Poste v. American etc. Ins. Co.,* 32 App. Div. 189, 52 N. Y. Supp. 910; *Perkins v. Philadelphia etc. Ins. Co.,* 93 S. C. 88, 76 S. E. 29; *Nielsen v. Provident etc. Assur. Soc.,* 6 Cal. Unrep. 804, 66 Pac. 663; *Parry v. Southeastern etc. Ins. Co.,* 95 S. C. 1, 78 S. E. 441; *Johnson v. Retail Merchants etc. Ins. Co.,* 112 Minn. 418, 128 N. W. 462; *Linn v. New York Life Ins. Co.,* 78 Mo. App. 192.)

The local agents did not have authority to waive prepayment of the first premium, or to accept anything but cash in payment thereof, as the policy sued upon provided limitations upon the powers of defendant's agents, and the said Swetland is in law charged with knowledge of such limitations, which will be enforced and the insured will not be heard to claim that the agent agreed to that which by the terms of the written instrument he had no power to agree to. (1915 Sess. Laws 392, 393; *Simpson v. Remington,* 6 Ida. 681, 59 Pac. 360; *Vadney v. State Board, etc.,* 19 Ida. 203, 112 Pac. 1046; 9 Cyc. 391; *Brown v. Massachusetts etc. Ins. Co.,* 59 N. H. 298, 47 Am. Rep. 205; *Northern Assur. Co. v. Grand View Bldg. Assn.,* 183 U. S. 308, 22 Sup. Ct. 133, 46 L. ed. 213; *Aetna Life Ins. Co. v. Moore,* 231 U. S. 543, 34 Sup. Ct. 186, 58 L. ed. 356; *Prudential Ins. Co. v.*

*Moore,* 231 U. S. 560, 34 Sup. Ct. 191, 58 L. ed. 367; *Neff
v. Metropolitan L. Ins. Co.* (Ind. App.), 73 N. E. 1041;
*Russell v. Prudential Ins. Co.,* 176 N. Y. 178, 98 Am. St.
656, 68 N. E. 252; *Ormond v. Fidelity Life Assn.,* 96 N. C.
158, 1 S. E. 796; *Mutual Reserve etc. Assn. v. Simmons,* 107
Fed. 418, 46 C. C. A. 393; *Oliver v. Mutual L. Ins. Co.,* 97
Va. 134, 33 S. E. 536; *Metropolitan Life Ins. Co. v. Thomp-
son,* 20 Ga. App. 706, 93 S. E. 299; *Lyke v. American etc.
Assur. Co.* (Mo. App.), 187 S. W. 265; *Batson v. Fidelity
etc. Ins. Co.,* 155 Ala. 265, 130 Am. St. 21, 46 So. 578; 40
Cyc. 259–262; 31 Cyc. 1333, 1334.)

Hawley & Hawley and S. S. Griffin, for Respondent.

Since the matter of the payment of the premium was a
matter wholly between Swetland and the agents, they had
authority to waive payment in cash. (*Marysville Mercan-
tile Co. v. Home Fire Ins. Co.,* 21 Ida. 377, 121 Pac. 1026;
*Kimbro v. New York Life Ins. Co.,* 134 Iowa, 84, 108 N. W.
1025, 12 L. R. A., N. S., 421; *Miller v. Brooklyn L. Ins. Co.,*
12 Wall. (U. S.) 285, 20 L. ed. 398; *Manhattan Life Ins. Co.
v. Hereford,* 172 Ala. 434, 55 So. 497; *Jurgens v. New York
Life Ins. Co.,* 114 Cal. 161, 45 Pac. 1054, 46 Pac. 386;
*Rosenborg v. Johnson,* 45 Colo. 53, 99 Pac. 315; *Dunn v.
Abrams,* 97 Ga. 762, 25 S. E. 766; *Williams v. Empire Mut.
etc. Ins. Co.,* 8 Ga. App. 303, 68 S. E. 1082; *Southern Mut.
L. Ins. Co. v. Best,* 8 Ky. Law Rep. 535; *Mooney v. Home
Ins. Co.,* 80 Mo. App. 192; *Union L. Ins. Co. v. Parker,* 66
Neb. 395, 103 Am. St. 714, 92 N. W. 604, 62 L. R. A. 390;
*Perea v. State Life Ins. Co.,* 15 N. M. 399, 110 Pac. 559;
*New England Mutual L. Ins. Co. v. Hasbrook's Admx.,* 32
Ind. 447; *Thies v. Mutual Life Ins. Co.,* 13 Tex. Civ. App.
280, 35 S. W. 676; *Buckley v. Citizens' Ins. Co.,* 188 N. Y.
399, 81 N. E. 165, 13 L. R. A., N. S., 889; *Life Ins. Co. of
Virginia v. Hairston,* 108 Va. 832, 128 Am. St. 989, 62 S. E.
1057; *Lawrence v. Penn Mut. L. Ins. Co.,* 113 La. 87, 1 Ann.
Cas. 965, 36 So. 898; *Devine v. Federal L. Ins. Co.,* 250 Ill.
203, 95 N. E. 174; *Reppond v. National L. Ins. Co.,* 100 Tex.
519, 15 Ann. Cas. 618, 101 S. W. 786, 11 L. R. A., N. S.,

981; *Carson v. Jersey City Ins. Co.*, 43 N. J. L. 300, 39 Am.
Rep. 584; *Jacobs v. Omaha Life Assn.*, 146 Mo. 523, 48
S. W. 462; *Thum v. Wolstenholme*, 21 Utah, 446, 61 Pac.
537; *Raulet v. Northwestern Nat. Ins. Co.*, 157 Cal. 213,
107 Pac. 292; *Aseltine v. Perry*, 75 Vt. 208, 54 Atl. 190.)

Limitations of an agent's authority not communicated to
the applicant are not binding upon him. (*Riordan v. Equitable Life etc. Soc.*, 31 Ida. 657, 175 Pac. 586; 1 Cooley's
Ins. Brief, p. 451; Bacon, Insurance, sec. 153; Clement, Insurance, pp. 452, 453; 5 Elliott on Contracts, sec. 4164;
*Odell v. Manhattan Life Ins. Co.*, 9 Ohio Dec. 589; *Hall v.
Union Central Life Ins. Co.*, 23 Wash. 610, 83 Am. St. 844,
63 Pac. 505, 51 L. R. A. 288; *Relief Fire Ins. Co. of New
York v. Shaw*, 94 U. S. 574, 24 L. ed. 291; *Taylor v. Aetna
Life Ins. Co.*, 13 Gray (Mass.), 434; *Fried v. Royal Ins. Co.*,
50 N. Y. 243; *Schwartz v. Germania Life Ins. Co.*, 18 Minn.
448; *Mississippi Valley Life Ins. Co. v. Neyland*, 9 Bush
(Ky.), 430; *Going v. Mutual Benefit Life Ins. Co.*, 58 S. C.
582, 37 S. E. 228; *Kimbro v. New York Life Ins. Co.*, supra.)

The order on the Stanfield Sheep Co. was accepted as payment. (*Veal v. Security Mutual Life Ins. Co.*, 6 Ga. App.
721, 65 S. E. 714; *Pennsylvania L. Mut. Fire Ins. Co. v.
Meyer*, 126 Fed. 352, 61 C. C. A. 254; *Stewart v. Union
Mutual L. Ins. Co.*, 155 N. Y. 257, 49 N. E. 876, 42 L. R. A.
147.)

RICE, C. J.—This is an action by respondent as beneficiary of a life insurance policy, alleged to have been issued
by appellant, upon the life of her son Alden W. Swetland.
The application signed by him provided that the policy
"shall not take effect unless this application shall have been
approved by the company and the first annual premium shall
have been paid by me, during my continuance in good
health." The policy, upon which the action is founded, contains a like provision.

It is conceded that the policy was never delivered, and
that the first premium was not paid. In the complaint it
is alleged that the consideration for the issuance of the policy

was the promise of Alden W. Swetland to pay to appellant the sum of $75.80, as follows: Twenty-five dollars by means of a written order drawn by Alden W. Swetland upon the Stanfield Sheep Company, the balance of $50.80 to be paid by Alden W. Swetland at his convenience within six months after the date of the application; that the order was drawn and accepted as a payment of $25; that the promise of Alden W. Swetland to pay the remaining amount due was accepted by appellant in lieu of the cash payment thereof. These allegations were denied by the answer.

Under the conceded facts it is plain that no contract of insurance was effected upon the life of Alden W. Swetland, unless the payment of the first premium was waived. According to the evidence contained in the record, it is clear that Kernohan, general agent of the company, had authority to waive the payment of the first premium in cash. But a careful examination of the record discloses that there was no substantial evidence tending to prove waiver of the payment of the first premium, either by appellant or its general agent, Kernohan.

At the close of the testimony, appellant renewed its motion for nonsuit upon the same ground as set forth when the motion was originally made at the close of respondent's case. The ground upon which the motion was based, in substance, was that appellant had failed to prove a sufficient case for the jury. A judgment for nonsuit upon that ground is not *res judicata.* If appellant had asked for a peremptory instruction in its favor, it should have been granted.

Upon the record in this case, the judgment will be reversed, with costs to appellant.

Budge and McCarthy, JJ., concur.

DUNN, J., Dissenting.—This opinion, prepared originally to be the opinion of the court, has not met with the approval of the majority. Inasmuch as it contains a statement of the facts in the case, as well as of my views, I file it as a dissenting opinion.

35 Idaho—8

This action was brought by the plaintiff to recover $2,500 on a life insurance policy taken out for her benefit by her son, Alden W. Swetland, with the New World Life Insurance Company.

The complaint alleges that on February 21, 1917, the said Alden W. Swetland at the request and solicitation of F. H. Kernohan and M. R. Shumate, agents of said company, applied to the defendant for said policy of insurance, that said application was accepted and approved by the defendant and that a policy evidencing said contract, insuring his life for one year for $2,500, was issued to the said Alden W. Swetland by the defendant, the exact date being unknown to the plaintiff; that the consideration for the issuance of said policy was the promise of said Alden W. Swetland to pay to defendant the sum of $75.80 as follows: Twenty-five dollars by means of a written order upon the Stanfield Sheep Company in favor of said F. H. Kernohan and M. R. Shumate, and the balance of $50.80 to be paid by the said Swetland at his convenience within six months from said February 21st; that upon said date the said Swetland drew an order for $25 upon said sheep company in favor of said agents and delivered it to said agents, which order was accepted and retained by them as payment of said $25; that the promise of said Alden W. Swetland to pay said premium was accepted by said defendant in lieu of the cash payment thereof; that it was stipulated and agreed in said contract of insurance that if Alden W. Swetland died during the life of said contract the defendant would pay to Nettie Swetland, plaintiff herein, the sum of $2,500; that on May 10, 1917, while said policy was in full force and effect said Alden W. Swetland died at Nampa, Idaho; that on July 10, 1917, plaintiff delivered to defendant at Spokane, Washington, proof of the death of said Alden W. Swetland, and that on September 28, 1917, the defendant denied liability on said policy and refused payment thereof.

The prayer of the plaintiff was for judgment for $2,500, with interest thereon at seven per cent from May 10, 1917.

The answer of the defendant admits that Kernohan was a duly licensed agent of the defendant at the times specified in the complaint and that Shumate was a subagent of Kernohan, and that the application for the policy in question was solicited by said agents, approved by defendant and the policy signed by the proper officers and sent to said Kernohan, but that said policy was never delivered to the insured nor to anyone for him for the reason that the first annual premium thereon was not paid by the insured. The defendant denies the allegations of the complaint with regard to the acceptance of the promise of Swetland as consideration for the issuance of the policy and as to the acceptance of the order for $25 in part payment of the first annual premium, and denies that any promise of the said Swetland to pay the said premium was accepted by the defendant in lieu of the cash payment thereof. It also denies the allegation of the complaint as to the contract to pay the plaintiff $2,500 or any other sum in case of the death of the insured during the life of the policy. The defendant admits the death of the insured as alleged in the complaint and the submission of proof of death, but denies that Alden W. Swetland died while the said policy or any policy was in force or effect.

As a second defense the defendant sets up the following provisions of the policy:

"26. No agent has power on behalf of the company to make or modify contracts, to extend the time of payment of premium, to waive any forfeiture, to bind the company by making any promise or representations, or to deliver any policy contrary to the provisions thereof. These powers can be exercised only by the president or vice-president, and secretary or assistant secretary, of the company (and then only in writing), and will not be delegated.

"27. This policy shall not take effect until approval of the application therefor by the company and until the payment of the first annual premium during the good health of the applicant."

The defendant further alleges that its agents in soliciting applications for life insurance and in delivering policies

issued by the defendant on such applications and in collecting the first annual premiums are limited by the following instructions (some provisions of which are not contained in the application or the policy):

(2) "Agents are not authorized under any circumstances to make, modify, or discharge contracts; to waive forfeitures; to issue permits; to accept risks; to grant extensions for payments of premiums; to accept anything but cash in payment of the whole or any part of a premium, unless by special authority from the Home Office; nor to receive any moneys due or to become due to the company, except on applications secured by them and in exchange for advance premium receipts attached to the application, or on policies or premium receipts which may be sent to them for collection.

"27. Under no circumstances must a policy be delivered to an applicant unless the premium has been paid to the agent.

"28. With every policy issued by the company, a delivery card is sent. This must be signed by the insured when the policy is delivered. This delivery card acknowledges receipt of policy and that the policy has been issued as applied for. It must be obtained in every instance and sent immediately to the Home Office.

"29. Should the life of the applicant become impaired or anything transpire or come to the knowledge of the agent making the risk less desirable after the application has been taken, and before actual delivery of the policy, the agent must not make delivery, but must return the policy to the company immediately, with a statement of the facts.

"30. The first year premium on a policy must not be accepted after the expiration of thirty (30) days from date of the applicant's medical examination without a personal health certificate."

The defendant further alleges that at the time said application was made by the insured the regular annual rate of a person of his age was $75.90; that the policy was not to take effect until the payment of said sum and that the insured never at any time paid said premium nor any part

thereof, and that the defendant never at any time waived the said payment nor any part thereof nor authorized its agents or representatives to waive the payment of the same in cash nor to accept as payment thereof anything but cash.

That after said application was signed by the insured it was transmitted to the head office of defendant and there approved by the proper officers of defendant and a policy for $2,500 was written up and sent to the said Kernohan at Nampa, Idaho, to be delivered to the said Alden W. Swetland when the said Swetland had paid the first annual premium in full in cash, and according to the aforesaid instructions and directions to said agents and according to the terms, tenor and effect of said application, and if the said applicant was in good health and according to said instructions and directions; that if any change whatever had occurred in the health of the applicant since the date of his medical examination to at once return the policy with a statement of all particulars pertaining to such change of health and to await further instructions; that said policy was received by the said Kernohan at Nampa, Idaho, about March 22, 1917, but was never delivered to said applicant, as he never paid the first annual premium or any part thereof during his continuance in good health or at any time, or requested that the same be delivered to him, and that said insurance policy never at any time took effect.

The defendant alleges on information and belief that said Swetland shortly after he had made his application for said life insurance policy, to wit, about March 3, 1917, became ill and did not continue in good health when and at the time said application was approved by defendant; that at the time said application was approved by the defendant neither it nor its special agents had any notice, knowledge or information of any illness of said applicant; that they, and each of them, believed that no change in his health had occurred since the date of said examination.

For a third defense the defendant alleges that at the time of the application for said policy the applicant gave said agents an order on the Stanfield Sheep Company for $25,

which order was thereafter presented by said agents to said company and payment thereof refused for the reason that the said Swetland had nothing coming or owing to him from said company; that said order was never paid, but was delivered to the plaintiff by said agents; that said order transaction was a personal matter between said applicant and said agents, and this defendant had no rights thereto or interest therein; that under the terms and conditions of said application and all policies issued by the defendant and the one applied for by the said Swetland and the written authority, directions and instructions given to its agents, such agents are limited in authority to accept only cash as payment of said first annual premium; that upon the issuance of said policy it was duly forwarded to the said Kernohan with authority and direction to deliver the same to said applicant, provided and only provided that no change had occurred in his health since the date of his medical examination, and provided said first premium should be paid in full in cash, but if any change had occurred in the health of said applicant since the date of his medical examination and he neglected or refused to pay said first premium in full in cash at once to return said policy with full particulars and await instructions; that said Kernohan received said policy of insurance but never delivered the same to said applicant for the reason that said first annual premium thereon was never paid nor any part thereof during the continuance of good health of said applicant, nor at any time; that said Kernohan shortly after receiving said policy notified said applicant through applicant's father to call for said policy and said applicant's father stated to Kernohan that he would deliver said notice and request to said applicant, but that neither said applicant nor anyone in his behalf ever called for or requested the delivery of said policy to said applicant, and that said applicant did not at any time after making said application take any interest whatever, to the knowledge of defendant or its said agents, by act or word in carrying out on his part the terms and conditions of said application and the provisions contained in said policy of insurance.

The case was tried before the court and a jury. At the close of plaintiff's case defendant moved for a nonsuit, which was denied. At the close of all the evidence the motion for nonsuit was renewed and denied.

On submission of the case to the jury a verdict was returned for plaintiff in the sum of $2,831.93. Judgment for said amount was entered, and defendant has appealed.

Appellant has assigned errors as follows: First, the denial of defendant's motions for nonsuit; second, the admission of testimony relative to things said and done by defendant's agents, Shumate and Kernohan, after Swetland's death; third, the giving of instructions 6, 8 and 9 and the refusal of defendant's request relative to payment of the premium; fourth, the giving of instruction numbered ten; fifth, sixth and seventh, the refusal of the court to give certain instructions requested by the defendant.

The court did not err in denying the motions of defendant for nonsuit.

The instructions given by the court fairly covered all the issues involved and there was no error in refusing the instructions requested by appellant.

Conceding that the court erred in admitting testimony of witnesses as to what Shumate said after the death of Swetland with regard to the validity of the policy, and the testimony of witnesses as to the view of the body by Kernohan and Shumate, such errors should be held harmless for the reason that aside from such testimony no other verdict than that rendered could properly have been given on the remaining facts in this case as the jury undoubtedly found them.

The contention of appellant that Kernohan had no authority to waive the payment of the first year's premium in cash is squarely met and overcome by the evidence. Kernohan was a general agent, and such agreement as the respondent claims he made with the insured, which claim the evidence amply supports, was within the apparent scope of his authority. Nothing was brought to the attention of the insured, so far as the record shows, that would indicate in the least

that Kernohan did not have authority to make such agreement. However, the regulations of the company were introduced in evidence by appellant and among these we find the following rule:

"38. If a note is taken for the whole or part of the first premium, such note and cash collected must be sent in with the application to the home office. The note will be recorded and thereafter returned to the agent. The company will not accept such notes in settlement, or part settlement, of any premium, and will hold agents responsible for payment of the premium in cash. If a conditional receipt is given for a promissory note (taken at the risk of the agent only), the receipt should specify 'note' instead of 'cash'."

The president of appellant, Mr. John J. Cadigan, was questioned as to the authority of an agent of the appellant to take a note or extend credit for the first annual premium, and he repeatedly stated that the company took no notes, but exacted cash from its agents, but he substantially admitted that the taking of notes and extending of credit for such first premium was a matter entirely between the agent and the applicant. The following excerpts fairly illustrate his testimony in that regard:

"Q. And if Mr. Kernohan should accept such an order and deliver the policy it would be all right with you, would it not, he being worth the money?

"A. That would be a matter between himself and the policy-holder. We would hold him for cash for any policy we delivered to him.

"Q. In other words, that he would have to pay the cash?

"A. Yes, absolutely.

"Q. And he could accept as the payment on the policy anything that he so desired, just so that he made good to your company?

"A. Well, as far as I know he gets cash. We haven't any other means of knowing whether he gets cash or not. He pays us cash, that is the only thing we are interested in . . . .

"Q. I say, in many cases the agent does not get cash, however, but simply gets the notes, or as in a case of this kind, an order on a company? He might get anything?

"A. Well, that is a matter between himself and the applicant. We do not go into that at all. We hold the agent for the cash and we assume that he gets cash for it."

There is much more testimony of the same kind from the president of appellant, from which it fairly appears that no matter what the regulations may say, agents are practically free as to methods of collecting the first year's premium if they make cash payments to the company of its portion thereof.

In the face of this rule and the testimony of appellant's president how can it be said that an agent could not extend credit to the insured for the first annual premium?

The agent undoubtedly having authority to waive payment of the first year's premium in cash, practically the whole case depends upon the fact as to whether or not the agent in this case, Kernohan, did so waive such payment.

While it is true that the policy itself and the laws of Idaho (Sess. Acts 1915, p. 393) make the policy and the application the entire contract, appellant could waive the provision written both in the application and the policy that the policy should not take effect until the payment of the first annual premium during the good health of the applicant. Nowhere in the application or the policy is there any provision postponing the taking effect of the policy until its delivery during the good health of the applicant, or making the force and effect of the policy depend upon delivery at all.

The application signed by the insured was witnessed by M. R. Shumate as soliciting agent and F. H. Kernohan as general agent. In the body of the application question number 19 reads as follows: "What amount have you deposited with the agent soliciting this application?" To which answer is given in Kernohan's handwriting: "Order on Stanfield Sheep Co. $25." On the back of the application is this indorsement: "Premium $75.88. Cash collected, Order $25."

Also on the back of this application, under the head of "Remarks," is this typewritten statement which is signed by F. H. Kernohan, Agent: "Mr. Swetland for years has been at Brunzell, but just came to Nampa, starting to work for Stanfield Sheep Co. of Nampa. He will be at different camps around Nampa. Stanfield has many, many camps. He is a fine young man." At the bottom of this application is the following:

"Statement to be Signed by Applicant upon Payment of the Premium or Any Part Thereof.

"Dated at *Nampa, Idaho, Feb. 21st,* 1917.

"I HEREBY DECLARE that I have paid to *F. H. Kernohan* the sum of *Seventy-Five 88/100* Dollars, and that I hold his receipt for the same, executed without alteration, on the receipt form detached from and corresponding in date and number with this Application. I assent to the terms of said receipt.

"(Signature of Applicant) ALDEN W. SWETLAND."

The blanks in this statement, which are indicated by the italicized words above, were filled by Kernohan in his own handwriting, and they must have been written with knowledge either that Swetland was to sign the statement, or after he had signed it in blank. The application was forwarded to the head office at Spokane, Washington, by Kernohan, the general agent at Nampa. By filling these blanks in Swetland's statement and sending this application to appellant he should be held to have declared to appellant that that statement of Swetland was substantially true. On an examination of the application it was impossible for appellant to conclude that the payment referred to in Swetland's statement, for which he claimed to hold a receipt, was a cash payment. No time was fixed for the payment of the order, and the indorsement, "Mr. Swetland, for years has been at Brunzell, but just came to Nampa, starting to work for Stanfield Sheep Co.," would justify the conclusion that no part of the sum covered by this order had yet been earned. The further statement, "He is a fine young man,"

might very properly be construed as indicating that Mr. Kernohan's investigations had convinced him that to such a young man it would be safe to extend credit for a few months on the first year's premium. If such payment had been made in cash there is no conceivable reason why the agent would have taken an order on the Stanfield Sheep Company; and the fact that such order was taken was conclusive evidence to appellant that the transaction referred to in Swetland's statement was something other than a cash payment. Having such notice before it when it issued the policy it should be held not only to have ratified the action of its agent but itself to have waived payment of the first year's premium in cash.

The evidence shows that at the time of the trial the soliciting agent, M. R. Shumate, was dead. Swetland, the insured, being dead, the only living person, so far as the record shows, who could explain the statement made by Alden W. Swetland, of which appellant complains, was its general agent, F. H. Kernohan, who testified on behalf of appellant. Since Kernohan filled out the blanks in this statement signed by Swetland and undoubtedly knew how it came to be signed, notwithstanding the payment of the premium was not made in cash, it certainly was incumbent upon appellant to have him explain to the jury the circumstances under which that statement was made and to deny, if he truthfully could do so, the statement made therein that Swetland held a receipt for $75.88. Rule No. 2 pleaded by the defendant in its answer shows that each application for insurance has attached to it what the appellant calls an advance premium receipt. The application, which is in evidence, shows that this advance premium receipt has been detached. Rule 38 above quoted requires that if this receipt is given for a promissory note the receipt should specify "note" instead of "cash." Kernohan, so far as the record discloses, is the only person who could have explained whether or not a note was given for that receipt. He is the only person who could have specifically denied that such a receipt was given as stated by Swetland over his signature, which statement is slightly corroborated by the testimony of respondent that

Swetland showed her a paper relating to his insurance that looked like a receipt.

But the record is absolutely silent as to these matters. When the policy was sent to Kernohan by the home office it was accompanied by a form of premium receipt, different from the advance premium receipt, to be countersigned by Kernohan and delivered with the policy if payment were made at such time. In reply to counsel for appellant Kernohan said no payment of the premium was made, and for that reason this receipt was not delivered to Swetland. This did not meet the requirements of the situation. Respondent admitted that the premium had not actually been paid, and there was never any claim that this receipt was delivered to and held by Swetland. Appellant did not see fit to question Kernohan, its general agent, about the particular receipt in dispute, and the jury were clearly entitled to consider this silence with the other evidence in the case as warranting the conclusion that the promise of Swetland had been accepted in lieu of a cash payment of the first annual premium as alleged in the complaint.

The order given by Swetland to Kernohan and Shumate at the time of making his application for insurance was presented to the sheep company on March 7, 1917, and payment was refused because of the fact that Swetland had no money due him at that time. This order was held either by Shumate or Kernohan up to about June 20, 1917, when it was delivered to the plaintiff by Kernohan. During all that time the record shows no attempt to collect this amount from Swetland and no complaint because of its nonpayment. Evidently Kernohan was fully satisfied that the premium would be paid notwithstanding his failure to realize on this order. He held the policy from about the 22d of March to May 11th, the day after Swetland's death, at which time he made haste to return it to the company. His testimony shows, however, that he was holding this policy ready to deliver it at any time to Swetland. He testifies that he saw Swetland's father in Shumate's grocery-store in Nampa just a few days before the death of the insured and that the father of the insured asked him about his son's policy and Kerno-

han said: "I told him that I had it and to tell him to come and get it and pay for it." So it appears that practically up to the time of Swetland's death this policy was held ready for delivery to him. In this connection it may be suggested that by the terms stated both in the application and in the policy the policy was to take effect on approval by the company and payment of the first annual premium during his continuance in good health. While the regulations of the company, which were not communicated to Swetland so far as the record shows, forbade delivery of the policy if it appeared that Swetland was not in good health, this was no part of his contract. Paragraph 27 of the policy reads: "This policy shall not take effect until approval of the application therefor by the company and until the payment of the first annual premium during the good health of the applicant." This clearly implies that immediately upon the approval of the application and the payment of the first annual premium during the good health of the applicant the policy shall take effect. Applied to this case it means that if Swetland had paid the first year's premium in cash at the time of making his application his policy would have been in effect the moment of the approval of the application, which was March 20, 1917. It means that if payment in cash was waived by Kernohan the policy took effect at exactly the same time as if cash had been paid.

Respondent offered in evidence the following letter, which was admitted by Mr. Cadigan, appellant's president, to have been sent out by appellant, though not personally signed by him:

"Office of the                                    "Executive Offices.
        PRESIDENT.
      "NEW WORLD LIFE INSURANCE COMPANY.
              "Spokane, Washington.
                                          "March 26, 1917.
"Good Morning, Mr. Swetland:

"Let us congratulate you most heartily on this Red Letter Day—your Birthday. We wish you to-day all happiness and success.

"The passing of this milestone reminds us that you are drawing just that much nearer to the Sunset of Life, and we couple with our congratulations a little souvenir in the shape of a Key Chain. It has been registered at this office and if lost by you it will no doubt be returned here and forwarded promptly to you. This is in keeping with the New World Life idea of service to policy holders.

"If you desire any information pertaining to your policy or are in the market for additional insurance, or know of any one who is, we shall appreciate having you advise us.

"Again we extend our heartiest best wishes and hope for your continued happiness, prosperity and success.

"Yours cordially,

"NEW WORLD LIFE INSURANCE COMPANY.

"JOHN J. CADIGAN,<br>"President."

"MR. ALDEN W. SWETLAND,
    "Brunzell, Idaho."

The key chain referred to in this letter was admitted in evidence. It has an aluminum tag attached to it on which is the following inscription:

"OWNER'S NAME IS REGISTERED AT No. 3513.<br>"NEW WORLD LIFE INSURANCE COMPANY.<br>"SPOKANE, WASH."

It is the contention of respondent that this letter and key chain constitute a recognition by appellant of Swetland as a holder of a policy then in force. This appellant denies. But, whatever the fact may be, these were properly submitted to the jury to be given such weight as they considered them entitled to.

The jury undoubtedly found that cash payment of the first annual premium had been waived and that the policy was in force and effect at the time of Swetland's death, notwithstanding there had been no manual delivery of it, and this view is sufficiently supported by the evidence.

Life insurance is based upon contract voluntarily entered into by the insurer and the insured. Unless such contract is satisfactorily shown there is no right of recovery, because

there is no insurer. But when a contract has been shown which was apparently regarded by the insurer as binding so long as the insured was alive, it ought not to be permitted to escape payment on the happening of the very thing which, by the terms of the contract, bound it to pay.

The facts disclosed by the evidence in this case render particularly applicable the language of the supreme court of the United States in the case of *Union Ins. Co. v. Wilkinson,* 80 U. S. (13 Wall.) 222, 20 L. ed. 617:

"On the other hand, it is well known, so well that no court would be justified in shutting its eyes to it, that insurance companies organized under the laws of one state, and having in that state their principal business office, send these agents all over the land, with directions to solicit and procure applications for policies, furnishing them with printed arguments in favor of the value and necessity of life insurance, and of the special advantages of the corporation which the agent represents. They pay these agents large commissions on the premiums thus obtained, and the policies are delivered at their hands to the assured. The agents are stimulated by letters and instructions to activity in procuring contracts, and the party who is in this manner induced to take out a policy, rarely sees or knows anything about the company or its officers by whom it is issued, but looks to and relies upon the agent who has persuaded him to effect insurance as the full and complete representative of the company, in all that is said or done in making the contract. Has he not a right to so regard him? It is quite true that the reports of judicial decisions are filled with the efforts of these companies, by their counsel, to establish the doctrine that they can do all this and yet limit their responsibility for the acts of these agents to the simple receipt of the premium and delivery of the policy, the argument being that, as to all other acts of the agent, he is the agent of the assured. This proposition is not without support in some of the earlier decisions on the subject; and, at a time when insurance companies waited for parties to come to them to seek assurance, or to forward applications on their own motion, the doc-

trine had a reasonable foundation to rest upon. But to apply such a doctrine in its full force, to the system of selling policies through agents, which we have described, would be a snare and delusion, leading, as it has done in numerous instances, to the grossest frauds, of which the insurance corporations receive the benefits, and the parties supposing themselves insured are the victims. The tendency of the modern decisions in this country is steadily in the opposite direction. The powers of the agent are, *prima facie,* coextensive with the business instrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. (*Bebee v. Hartford County Mut. Fire Ins. Co.,* 25 Conn. 51, 65 Am. Dec. 553; *Lycoming etc. Ins. Co. v. Schollenberger,* 44 Pa. 259; *Beal v. Park Fire Ins. Co.,* 16 Wis. 241, 82 Am. Dec. 719; *Davenport v. Peoria etc. Ins. Co.,* 17 Iowa, 276.) An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business, for the acts and declarations of the agent, within the scope of his employment,. as if they proceeded from the principal. (*Woodbury Sav. Bk. etc. Assn. v. Charter Oak Fire etc. Ins. Co.,* 31 Conn. 517; *Horwitz v. Equitable etc. Ins. Co.,* 40 Mo. 557, 93 Am. Dec. 321; *Ayres v. Hartford Fire Ins. Co.,* 17 Iowa, 176, 85 Am. Dec. 553; *Howard Fire Ins. Co. v. Bruner,* 23 Pa. St. 50.)''

In such cases as this the beneficiary usually labors under the great disadvantage of having all the living witnesses to the contract of insurance on the side of the insurer. While this fact does not relieve the courts from the duty of requiring such beneficiary to prove his case according to law, it does lay upon the courts the duty of preventing, as far as possible, the insurer from escaping its legal obligations by the unfair use of the advantage given it by the death of the party with whom the contract was made. When facts and circumstances properly admitted in evidence are of such character that in ordinary affairs they would be accepted as tending to prove such a waiver as is claimed in this case, I fail to see how the same facts and circumstances, when

shown on a trial before a jury, can be held to have no tendency to prove such waiver. I think the judgment should be affirmed.

Lee, J., concurs.

(April 28, 1922.)

## ON PETITION FOR REHEARING.

RICE, C. J.—A petition for rehearing was filed in this case, in which it is ably and earnestly contended that the court by its decision took upon itself an exclusive function of the jury when it found that the first payment had not been waived; that the record in this case contains sufficient evidence to support the verdict upon that point.

We have carefully re-examined the record. The burden of showing waiver in this case rested upon the respondent. The waiver contended for imports that the insurance company, or its agent on its behalf, consented that the policy should become effective without complying with the precedent condition requiring payment of the first annual premium during the good health of the assured. A separate consideration is not necessary to support a waiver, but in this case a waiver cannot be inferred unless there is at least some evidence that the applicant obligated himself to pay the first annual premium. The jury could not infer that the company consented to make a gift to the applicant. Nowhere in the record is there any evidence that the assured obligated himself at any time to pay the first annual premium, or any part thereof, except $25 represented by the order upon the Stanfield Sheep Company. This was not sufficient, for $25 is but a part of the annual premium required.

It is true that the applicant signed a statement which was forwarded to the company with his application, as follows:

"I hereby declare that I have paid to F. H. Kernohan the sum of Seventy-five 88/100 Dollars, and that I hold his receipt for the same, without alteration and the receipt form

detached from and corresponding with this application. I assent to the terms of said receipt.''

                    "ALDEN W. SWETLAND.''

This is simply his declaration, and is admittedly false as to the fact of payment.   Mr. Kernohan gave currency to this declaration by forwarding it to the company, but clearly his act in sending this false statement to the company was not an acknowledgment to the applicant that he had received payment.   There is no proof that the receipt referred to was delivered to the applicant.   The plaintiff, on her direct examination, testified as follows:

"Q. Did your son ever show you a paper relating to his insurance policy?

"A. Yes.

"Q. Do you know what became of that paper?

"A. No.   He gave me some papers to put away and when I came to look for them I never could find them, but then he had them in his pocket book and showed them to me.

"Q. Do you know what it was?

"By Mr. Cavanah: Just a minute.   We object to that for the reason a proper foundation has not been laid to prove the contents of this paper.

"By Mr. Worthwine: No, I am not asking for the contents.

"Q. Generally, do you know what it purported to be, if you know what it was?

"A. Well, I supposed it was a receipt.

"Q. Mrs. Swetland, not what you supposed, do you know what it was, or purported to be, what it looked like?

"A. Well, it looked like a receipt.

"Q. And you say that has been lost?

"A. Yes.''

That testimony is not sufficient to justify the conclusion that the paper referred to by Mrs. Swetland was the receipt in question, and this, together with the declaration of the applicant, is the only evidence in the record relating thereto.

In view of the foregoing, none of the incidents disclosed by the record furnish a sufficient basis upon which a waiver

of the payment of the first annual premium can be inferred. They are all consistent with the intention that the policy should become effective upon the payment of the first annual premium, and none of them are inconsistent with the existence of such intention.

It is not permissible to conclude that certain matters shown by the record would justify an inference that the payment of the first annual premium had been waived, and conclude therefrom that the jury might infer that the applicant must have promised to pay the premium. An inference of fact is not a sufficient basis upon which to found another inference of fact.

The burden being on respondent, an essential fact to justify an inference of waiver is the obligation on the part of the applicant to pay the first premium, which was not shown.

The petition will be denied.

McCarthy, J., concurs.

Budge, J., concurs in the denial of the petition.

Dunn, J., adheres to the views heretofore expressed by him.